LEASING SERVICE
CORPORATION, Appellee,

v.

Fred Lee CRANE, William Donald
Crane and Crane Brothers Well
Drilling, Appellants.

LEASING SERVICE
CORPORATION, Appellant,

v.

Fred Lee CRANE, William Donald
Crane and Crane Brothers Well
Drilling, Appellees.

Nos. 85–1679, 85–1755.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1986.

Decided Oct. 30, 1986.

Monty C. Beck and Orville D. Coward, Jr. (Coward, Dillard, Cabler, Sossoman & Hicks, P.A., Sylva, N.C., on brief), for appellants/cross-appellees.

Joseph P. McGuire (McGuire, Wood, Worley & Bissette, P.A., Asheville, N.C., on brief), for appellee/cross-appellant.

Before PHILLIPS, CHAPMAN and WILKINSON, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

This is an appeal and cross-appeal from a judgment rendered in a diversity action involving a disputed lease of drilling equipment. After defendants Fred and Donald Crane (the Cranes) leased a drill rig from a supplier, the lessor-supplier assigned the lease to plaintiff Leasing Service Corporation (Leasing Corp.). When the Cranes fell behind in their payments under the lease, Leasing Corp. sued in diversity, seeking damages for breach and repossession of the rig under provisions of the lease. The Cranes counterclaimed seeking damages for breach of contract, slander of title, and statutory unfair trade practices. In a bench trial, the district court dismissed all of the Cranes' counterclaims and awarded repossession of the rig and damages, limited by a side agreement, to Leasing Corp.

On the Cranes' appeal, we affirm dismissal of their counterclaims, and Leasing Corp.'s right to repossession and to an award of damages. On Leasing Corp.'s cross-appeal, we hold that the district court erred in enforcing the side agreement to limit Leasing Corp.'s damages and we remand for an award of the full damages to which Leasing Corp. was entitled for breach of the lease.

I

At the critical times, the Cranes were partners in Defendant Crane Bros. Well Drilling (Crane Bros.). On November 1, 1978, the Cranes negotiated for the lease of a Driltech drill rig with Francis Beall and Terry Blackmon. Beall was the general manager of Nesbit Equipment—Charlotte Division of L.B. Smith, Inc. (Nesbit or L.B. Smith, Inc.). Blackmon was a Nesbit sales employee.

The Driltech drill rig consisted of two separate pieces of equipment—the drilling apparatus itself manufactured by Driltech, Inc. and a truck manufactured by Crane Carrier Company upon which the drill rig was mounted. Driltech, Inc. purchases trucks from Crane Carrier Company and attaches its drilling rigs to the trucks. The truck and drill rig are then sold as a single unit. The truck serves both as a method to move the drill rig from one job site to another as well as a drilling platform. In this case, Driltech, Inc. sold the drill and truck as a single unit and the two pieces of equipment have not been separated since the original assembly.

During the November 1, 1978, meeting between the Cranes and the Nesbit representatives, at 1:00 a.m., following hours of protracted negotiation, Fred Crane awakened his wife and requested that she review a proposed lease agreement and prepare an additional handwritten agreement. Neither Fred nor Donald Crane are able to read or write. Mrs. Crane crossed out language in the printed lease agreement granting the lessor a security interest in all other assets belonging to the Cranes. She then prepared a handwritten document containing, *inter alia*, the following provision:

> If Crane Bros. can not honor the contract, Nesbit Equipment will take the Drilltech [sic] D40K well drilling machine back and release Crane Bros. from all obligations of the contract.

Beall and the Cranes then signed the Equipment Lease Agreement, which provided that the total rent would be $295,-500.00 payable over 60 months, Schedules A and B to the Equipment Lease Agreement, which contained a description of the equipment, and an itemization of payments and charges thereunder, a purchase option agreement granting to the defendants the right to purchase the drill rig for $68,-800.00 providing the Lessee was not then in default, and the handwritten agreement. The Cranes contended at trial that contemporaneously with the signing of these documents, Beall agreed that the defendants would receive free and clear title to the Crane Carrier truck in exchange for services to be rendered in the future to Nesbit. Beall denied any such agreement.

Beall never revealed to his employer or any Leasing Corp. representative that he had signed the handwritten agreement. The evidence established that Beall had no actual authority to enter into any such agreement on behalf of Nesbit or Leasing Corp. His actual authority was only to sign any lease agreement and accompanying documents. The extent of his actual authority was concededly not known to the Cranes. On November 7, 1978, when Nesbit assigned the lease to Leasing Corp. the

handwritten document was not included among the other attachments and schedules to the lease. It is not disputed that the Cranes knew that the lease was to be assigned immediately; the agreement expressly so stated. The first notice any Leasing Corp. representative had concerning the written agreement was approximately one year after execution of the lease when Fred Crane showed a copy of the document to the regional vice president of Leasing Corp.'s sister corporation, Credit Alliance Corporation.

The assignment agreement between Nesbit and Leasing Corp. warranted to the assignee that the equipment lease agreement contained or described the entire agreement and all instruments made or given in connection with the lease. The Equipment Lease Agreement provided, *inter alia*, that upon assignment the lessee agreed not to assert against any assignee any defense, setoff, recoupment, claim or counterclaim which the lessee might have against Nesbit, that all equipment which was added to or became attached to the equipment thereunder would immediately become the property of the lessor and subject to the lease, that title to the equipment would at all times remain in lessor and the lessee would protect and defend the title of lessor, that the lessor had certain rights and remedies upon default by the lessee, and that the lessor and lessee waived any and all right to trial by jury in any action or proceeding relating to the subject matter of the lease. The Delivery/Installation Certificate also provided that the lessee waived any claims against the assignee and recognized the assignee's right to enforce the lease free from any defenses, offsets or counterclaims.

After the lease agreement and the assignment had been executed, the Cranes obtained a North Carolina certificate of title to the truck. They did this by submitting an application and the Original Manufacturer's Statement of Origin (MSO) for the truck to the North Carolina Division of Motor Vehicles. This MSO showed that the truck was manufactured by Crane

Carrier Company and was assigned to Driltech, Inc. on February 17, 1978; that Driltech, Inc. assigned the original MSO to L.B. Smith, Inc. on June 9, 1978; and that L.B. Smith assigned it to the Cranes on January 5, 1979. The Cranes applied for a certificate of title the same day, and their certificate was issued on February 1, 1979. The certificate of title, which was for the truck only, showed no liens or encumbrances, a problem traceable to Blackmon who, without authority, had delivered the MSO to the Cranes with no lien indicated.

Shortly thereafter, Leasing Corp. asked Nesbit about the location of its certificate of title on the drilling rig leased to the Cranes. Sometime later, Leasing Corp. determined that the Cranes had obtained title to the truck and that the plaintiff's lien was unrecorded. Repeated attempts to have the Cranes note the plaintiff's lien on the Cranes' certificate proved fruitless.

Accordingly, on January 7, 1980, Leasing Corp. filed its own application for title to the truck based upon a duplicate MSO. This duplicate MSO showed assignments from Crane Carrier Company to Driltech, Inc. on February 2, 1978, from Driltech, Inc. to L.B. Smith, Inc. on May 29, 1980, and from L.B. Smith to Leasing Corp. on June 24, 1980. Leasing Corp. applied for a certificate of title the same day with the North Carolina Division of Motor Vehicles and was issued a certificate on July 21, 1980. The parties were able to obtain dual certificates because of slight variations in the way the serial number was listed in their different applications.

When representatives of the North Carolina Division of Motor Vehicles became aware that two titles had been issued on the same vehicle they investigated the matter and concluded that the Cranes had the original and superior title to the truck and that Leasing Corp.'s title should be recalled. Leasing Corp.'s title, however, was not recalled.

The Cranes made payments to Leasing Corp., as assignee of the lease, regularly until October 1983. When the Cranes made their November payment, they were then two months in arrears. Thereafter, the Cranes failed to make any payment under the lease until February 1984. In February 1984, the Cranes paid Leasing Corp. $2,500.00 instead of their usual payment of $4,160.00. Fred Crane had earlier spoken to Laurence Kimmel, Leasing Corp.'s operations manager, advising him that the Cranes were unable to make their regular payments and requesting that a new payment schedule be arranged. Kimmel agreed that the Cranes could make payments of $2,500.00 until they were financially able to resume their regular payments. However, on March 20, 1984, Leasing Corp. declared the Cranes in default and accelerated the entire unpaid balance of rent.

Fred Crane thereupon telephoned Kimmel who advised him that the "home office" would not accept a reduced payment schedule and had demanded that the lease be declared in default. The Cranes then made no further payments under the lease and refused Leasing Corp.'s demands that they surrender possession of the well drilling rig to Leasing Corp.

In November 1984, Leasing Corp. brought this action seeking damages and repossession of the drill rig, including the truck.

The Cranes asserted various defenses and counterclaims including breach of the alleged renegotiated contract terms between defendant Fred Crane and Kimmel, slander of title to the truck, conspiracy to acquire a false and fraudulent title and unfair and deceptive trade practices. Upon Leasing Corp.'s pre-trial motion to dismiss the various counterclaims, the court granted the motion as to the Cranes' Fourth Defense/Counterclaim, alleging breach of the allegedly renegotiated lease agreement between Fred Crane and Kimmel. The court also granted Leasing Corp.'s motion to strike the Cranes' demand for a jury trial based upon the Cranes' waiver of the right to a jury trial in the Equipment Lease Agreement, and the case went to trial to the court.

On trial, the Cranes' basic contentions in defense were that the Equipment Lease Agreement covered only the drill rig, and not the truck; that pursuant to their agreement with Nesbit, the defendants were to receive title to the truck free and clear of any lien by Nesbit or Leasing Corp., and that under the side written agreement, Leasing Corp. was only entitled to recover possession of the rig as a remedy for any default in rental payments.

As to intended coverage of the lease, the Cranes could point to no sales document showing their purchase of the truck and could not identify the purchase price of the vehicle. They relied instead on Schedule A of the lease agreement which described the equipment being leased as one "Driltech Drill Rig powered by Caterpillar 3208 diesel engine in Crane Carrier and equipped with sullair 750/250 compressor . . .," model D40K, Serial No. 870488, and upon their certificate of title to the truck and the original MSO.

The district court rejected the Cranes' strained interpretation of the lease language and determined that the Cranes had obtained title to the truck improperly. The court found that the parties intended that both the drill and the truck were subjects of the lease and that it was not the parties' intention that the Cranes obtain title to the truck. On this basis, the court determined that Leasing Corp. was entitled to repossession of both rig and truck.

The court next addressed the Cranes' contention that the handwritten agreement limited Leasing Corp.'s remedies solely to repossession of the drilling equipment. The court held that Leasing Corp. took the assignment subject to all defenses, including the handwritten agreement defense, which the Cranes could assert against the assignor, Nesbit. This conclusion was based upon the court's finding that North Carolina general contract law, rather than Article 9 of the Uniform Commercial Code, N.C.Gen.Stat. §§ 25–9–101 et seq., governed the lease of the drill and truck, and that under contract law a good faith purchaser for value of a nonnegotiable chose in action takes it subject to defenses.

Despite finding the handwritten agreement enforceable against Leasing Corp., however, the district court went on to conclude that the document did not preclude the plaintiff's recovery of all past due rental payments owed from the time the Cranes became unable to "honor the contract." The court interpreted the contract as requiring the Cranes, once they were unable to make the rental payments, to invoke the limitation of remedy provision in the handwritten agreement, by delivering possession of the equipment to Leasing Corp. Because the Cranes refused to allow Leasing Corp. to repossess the equipment the court awarded the assignee damages in the amount of $57,240.00, the amount of the lease payments for the months the Cranes had use and possession of the equipment. Moreover, the court determined that the waiver of defenses clause contained in the Lease Agreement did not vitiate the limiting effect of the handwritten agreement upon Leasing Corp.'s remedies. Accordingly, the court limited Leasing Corp.'s remedies to repossession of the drill and truck plus recovery of the unpaid lease payments owed until the time the Cranes were forced to relinquish possession of the equipment.

The court dismissed all the Cranes' remaining counterclaims for insufficiency of proof.

This appeal and cross appeal followed.

## II

We consider first the Cranes' contention that the lower court's enforcement of a contractual waiver of the right to a jury trial deprived them of their seventh amendment right to jury trial. We disagree and affirm the denial of a jury trial.

 The seventh amendment right is of course a fundamental one, but it is one that can be knowingly and intentionally waived by contract. See K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 755–56 (6th Cir.1985); National Equipment Rental

*Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977). Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed. *See, e.g., Hendrix,* 565 F.2d at 258; *but see K.M.C. Co.,* 757 F.2d at 758 (burden is on party seeking to avoid waiver to show not voluntary and knowing).

■ The Cranes contend that Leasing Corp. has failed to prove such a waiver in light of the circumstances. Specifically, they point out that the waiver provision at issue here is situated on the reverse side of a two-page, standardized, fine print contract provided by Leasing Corp. and Credit Alliance Corporation. The waiver, which stipulates that "Lessor and Lessee waive any and all right to a trial by jury in any action or proceeding based hereon or relating to the subject matter hereof," is not set off in a paragraph of its own. It is in the ninetieth line of print and is in the middle of a thirty-eight line paragraph.

We cannot declare the district court's finding of waiver clearly erroneous on the evidence. There are other factors than those emphasized by the Cranes that make the finding a completely plausible one.

The lease agreement was only two pages long. The parties were not manifestly unequal in bargaining positions. Despite their lack of formal education, the Crane brothers were manifestly shrewd businessmen who had been in a generally successful drilling business for sixteen years. Fred Crane had held both a dealer's and a salesman's license for the purchase and the sale of equipment. The circumstances surrounding the lease negotiations in fact reveal both the Cranes' general business acumen and their specific understanding of the Equipment Lease Agreement. The Cranes engaged in protracted negotiations with Nesbit at the Cranes' shop, while a Nesbit competitor waited outside in the event the Cranes did not obtain a favorable agreement. Fred Crane's wife reviewed the two page lease agreement closely enough to locate, object to, and have lined out the provision in the middle of the document which granted the lessor a security interest in all other assets belonging to the lessee. Finally, the Cranes' insistence on the execution of the handwritten agreement which limited the lessor's remedies in the event of a default indicates their understanding of the situation and of their interests.

These factors taken together persuade us that the district court did not err in finding that the Cranes knowingly and voluntarily waived their right to a jury trial.

## III

■ We now address the Cranes' contention that the lower court erred in finding that the parties intended the equipment lease agreement to cover both the drill rig and the truck and that the parties did not intend or agree that the Cranes would acquire title to the truck. There is no merit to the contention.

The Cranes point to the language in Schedule A of the Equipment Lease Agreement, which describes the leased equipment, to support their contention that the lease covers only the drill itself and not the truck as well. The description reads in pertinent part: "Driltech Drill Rig powered by Caterpillar 3208 diesel engine in Crane Carrier and equipped with ... compressor [etc.]." The Cranes argue that the phrase "in crane carrier" is a prepositional phrase which merely modifies or describes the type of drill rig, and that the crane carrier is clearly not a subject of the description. They further point to the description's failure to list the model and serial numbers for the crane carrier truck. Rather, the only model and serial numbers listed in the lease are for the drilling machine.

The lower court rejected the Cranes' contention and found that "the parties intended that both the drilling equipment and the truck were subjects of the lease." Assuming that this constituted a finding of fact on a disputed question of intention, it is not clearly erroneous. It is a plausible finding on the evidence.

The agreement's failure to list the truck's serial and model numbers is obviously not dispositive. The drill rig is the much larger of the two pieces of equipment and testimony revealed that in the trade the combined unit is often referred to as a "drill rig." Indeed, the Equipment Lease Agreement stipulates that: "All equipment, accessories, parts and replacements for or which are added to or attached to Equipment shall immediately become the property of Lessor and shall be deemed incorporated in Equipment and subject to the terms of this lease as if originally leased hereunder." On an issue of party intention where credibility of party witnesses is so critical and the evidence obviously susceptible to the inference drawn by the court, we must uphold its finding.

On the same basis, the court's finding that it was not the parties' intention or agreement that the Cranes acquire title to the truck is not clearly erroneous. The Cranes contend that this finding was premised upon at least two erroneous subsidiary rulings. First, that the court erred in refusing to credit Fred Crane's testimony that the defendants and Frank Beall entered into an oral agreement giving the defendants title to the truck. The court reasoned, however, that this was simply a matter of resolving a dispositive credibility issue, because Beall categorically denied the existence of any such agreement. Where, as here, there is nothing in the record which makes it manifest that in such a head-on clash of testimony the version accepted by the trier of fact is incredible, we must accept the finding made.

Second, the Cranes take issue with the court's finding that Blackmon lacked even apparent authority to assign the original MSO to the Cranes and that for this reason the Cranes had breached the lease agreement's requirement that they should "protect and defend the [Leasing Corp.] title" by improperly acquiring the title certificate. Again, we find no error of law or clear error of fact in this determination. Apparent authority is that authority which the principal has held its agent out as possessing and upon which a third party reasonably relies. *Zimmerman v. Hogg & Allen,* 286 N.C. 24, 209 S.E.2d 795 (1974). There is no error in the district court's determination that any reliance by the Cranes upon Blackmon's authority to convey title to the truck was unreasonable in light of the language in the lease agreement, the Cranes' experience in dealing with purchases and leases of equipment of this kind, and the dearth of any documentation whatsoever supporting the sales agent's purported conveyance of title to the truck.

Accordingly, we affirm the lower court's findings that the parties intended the lease agreement to cover the crane carrier truck and that the Cranes breached the agreement by improperly obtaining title to the truck.

IV

We turn next to the question of the handwritten agreement's effect upon Leasing Corp.'s right to recover a full measure of damages for the Cranes' breach of the lease agreement. Leasing Corp. contends that the court erred in finding the waiver of defenses provisions contained in both the Equipment Lease Agreement and the Delivery/Installation Certificate ineffective to preclude the Cranes' defense that the handwritten agreement, and the limitations of remedies provision contained therein, modified the original contract. The district court's conclusion was based upon its belief that the lease at issue was a "true lease" rather than a transaction intended to create a security interest, so that North Carolina general contract law, not Article 9 of the Uniform Commercial Code, N.C.Gen.Stat. §§ 25-2-101 *et seq.,* should govern. Under North Carolina contract law, an "assignee of a nonnegotiable chose in action, though he buys it for value, in good faith, and before maturity, takes it subject to all defenses which the debtor may have had against the assignor...." *William Iselin & Co. v. Saunders,* 231 N.C. 642, 58 S.E.2d 614, 617 (1950). Accordingly, the lower court concluded that Leasing Corp. took

the assignment subject to all defenses, including the handwritten limitation of remedies provision, which the Cranes could assert against the assignor, Nesbit.[1]

The district court erred in ruling that N.C.Gen.Stat. § 25–9–206 applies only to leases "intended as security." The official comment to § 25–9–206 expressly states that: "The same rules are made applicable to leases as to security agreements, whether or not the lease is intended as security." Other courts construing U.C.C. § 9–206 have relied upon this official comment to conclude that the section applies to leases whether or not they constitute secured transactions. In *United Counties Trust Co. v. Mac Lum, Inc.*, 643 F.2d 1140, 1144 (5th Cir.1981), for instance, the Fifth Circuit found a sale-leaseback of restaurant equipment to be subject to § 9–206 even though the agreement was not intended as a security interest. *See also Leasing Service Corp. v. Diamond Timber, Inc.*, 559 F.Supp. 972, 977 (S.D.N.Y.1983); *Credit Alliance Corp. v. Cornelius & Rush Coal Co.*, 508 F.Supp. 63, 67 (N.D.Ala.1980); *Credit Alliance Corp. v. David O. Crump Sand & Fill Co.*, 470 F.Supp. 489, 492 (S.D.N.Y.1979). We agree with the rationale of those decisions.

■ Accordingly, we hold that N.C.Gen. Stat. § 25–9–206 governs the Cranes' lease of the drill and truck here. Applying § 25–9–206(1) to this transaction gives effect to the waiver of defenses clauses contained in the lease agreement and the Delivery/Installation Certificate. Section 25–9–206(1) mandates that:

> an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without no-

tice of a claim or defense except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the article on commercial paper (article 3).

As the district court conditionally recognized, Leasing Corp. undoubtedly met the requirements of § 25–9–206(1), if it did control. First, Leasing Corp. took the assignment for value, as it paid Nesbit $218,530.00 for the equipment and lease assignment. Second, there was no evidence whatsoever that the assignment was not in good faith. Third, the evidence clearly established, as noted by the district court, that Leasing Corp. took the assignment without notice of the Cranes' defense of the handwritten modification of remedies. The Cranes have conceded that Beall failed to advise his employer or Leasing Corp. that he had executed the handwritten agreement, and it was not included in the documents transferred to Leasing Corp. pursuant to the assignment. The first notice any Leasing Corp. representative had concerning the handwritten agreement was approximately one year after November 1, 1978, when Fred Crane showed a copy of the document to the Regional Vice President of Leasing Corp. and/or its sister corporation, Credit Alliance Corporation.

■ Accordingly, as "an assignee who takes his assignment for value, in good faith and without notice of a claim or defense," Leasing Corp. enjoys under § 25–9–206 the same protections afforded holders in due course of negotiable instruments. The handwritten modification, however, might still serve to limit Leasing Corp.'s remedies if the side agreement qualifies under the exception to § 25–9–206's protection of holders in due course, as a defense "which may be asserted against a holder in due course of a negotiable instrument un-

---

1. The court, however, rejected the Cranes' contention that, being enforceable, the side agreement prevented *any* award of damages, and limited Leasing Corp. to specific recovery of the leased property. Instead, the court concluded that the agreement did not limit Leasing Corp.'s right to recover past due rentals owed from the time the Cranes failed to "honor the contract."

The court computed this as being the entire balance due as of the date the equipment was seized in ancillary claim and delivery proceedings in December 1984. Because Leasing Corp. of course contends that the limitation of remedies agreement was not enforceable at all, both parties challenge this attempted Solomonic resolution of the limitation of remedies issue.

der the article on commercial paper (Article 3)." But the handwritten agreement does not provide such a defense, as, again, the district court also conditionally recognized. N.C.Gen.Stat. § 25–3–119 expressly provides that a holder in due course is not affected by any limitation of his rights arising out of a separate written agreement between the obligor and his immediate obligee if he had no notice of the limitation when he took the instrument. *See also Leasing Service Corp. v. Diamond Timber, Inc.*, 559 F.Supp. 972 (S.D.N.Y. 1983).

Accordingly, we conclude that under § 25–9–206(1), the waiver of defenses provisions in the Equipment Lease Agreement and in the Delivery/Installation Certificate are valid and enforceable against the Cranes and that the handwritten agreement between the Cranes and Beall, as representative of Nesbit, does not qualify as a defense which may be asserted as a limitation of remedies. We must therefore vacate the district court's damage award for error in its amount and remand with instructions that the court award Leasing Corp. the measure of damages to which it is entitled under the lease agreement unlimited by the side agreement.[2]

### V

We address finally the Cranes' contention that the district court erred in dismissing defendants' counterclaims. We find no error in the dismissals.

■ In the Cranes' Fourth Defense/Counterclaim, the defendants alleged that Leasing Corp. breached its agreement in February 1984 to reduce the Cranes' payment from $4,000.00 per month to $2,500.00 per month by the plaintiff's thereafter demanding immediate payment of the total balance due under the lease and threatening to take possession of the

drill and truck. Upon Leasing Corp.'s motion, the district court dismissed this counterclaim for breach of contract under Rule 12(b)(6), Fed.R.Civ.P. for failure to state a claim. We agree with that ruling.

Laying aside the disputed issue of the making of any such agreement, the pleading failed to allege any present consideration supporting the purported modification of the lease agreement. "Generally, a promise to perform a preexisting obligation is not sufficient consideration in exchange for a promise by the adverse party." *Penn Compression Moulding, Inc. v. Mar-Bal, Inc.*, 73 N.C.App. 291, 326 S.E.2d 280, 282 (1985). The district court therefore properly dismissed this counterclaim on the Rule 12(b)(6) motion.

■ The district court also properly dismissed at trial the defendants' Fifth Defense/Counterclaim alleging slander of title, the Sixth Defense/Counterclaim alleging conversion, the Seventh Defense/Counterclaim alleging a civil conspiracy between the plaintiff and Nesbit, and the Eighth Defense/Counterclaim alleging unfair and deceptive trade practices, all for failures of proof. Each of these four counterclaims was based upon Leasing Corp.'s allegedly "false claims asserting its ownership of and title to said truck." Because, as we have earlier held, the district court properly found that the Cranes were the parties at fault in regard to the conflicting title claims, all these counterclaims fell in with that finding. They were therefore properly dismissed.

### VI

We affirm the judgment of the lower court on the issues of the jury trial waiver, the coverage of the lease as to the crane carrier truck, and the dismissal of the Cranes' counterclaims. We reverse and re-

---

**2.** This must be done by the district court in view of the fact that it has not yet addressed the amount properly recoverable if, as we now hold, the limitation of remedies agreement does not apply. Leasing Corp. claims back rent owed, sales tax, late charges, and an undetermined amount of attorney fees, all pursuant to the lease agreement. We cannot know, of course, the extent to which these various items may be in dispute, either as to basic entitlement or specific amount, nor could we make the necessary determination on the record we review.

mand, however, the court's conclusion regarding the applicability of N.C.Gen.Stat. § 25–9–206(1). We find that § 25–9–206(1) is effective to preclude the Cranes' defense of the handwritten modification and that Leasing Corp. is entitled to the full remedies due under the Equipment Lease Agreement for the breach here proven.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.