**PHOENIX LEASING INC., a California Corporation, Plaintiff,**

v.

**SURE BROADCASTING, INC., a Delaware corporation, Defendant.**

**And Related Counterclaim.**

**No. CV–N–91–185–ECR.**

United States District Court, D. Nevada.

Jan. 13, 1994.

Vargas & Bartlett, Reno, NV, Frandzel & Share, San Francisco, CA, for plaintiff.

Sure Broadcasting, Inc., Quogue, NY, for defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

On April 22, 1991, Plaintiff, a commercial lender, properly filed a Complaint (Doc. # 1) against Defendant, borrower, in this court, on the basis of diversity of citizenship. On May 31, 1991, Defendant filed an Answer and Jury Demand (Doc. # 4). On the same date, Defendant filed a Compulsory Counterclaim and Jury Demand (Doc. # 5) against Plaintiff.

On June 20, 1991, Plaintiff filed a Motion (Doc. # 12) to Strike Jury Demand. Plaintiff asserts that Defendant/Counterclaimant waived its rights to a jury trial in relation to any action brought on or with respect to various loan documents which the parties executed through a contractual waiver appearing in the loan agreement.

On July 8, 1991, Defendant/Counterclaimant (hereinafter, Defendant) filed (Doc. # 18) a Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Strike Jury Demand. Plaintiff filed a reply (Doc. # 21) on July 18, 1991.

Before this court could reach a decision on the motion to strike, Defendant became involved in bankruptcy proceedings. Pursuant to 11 U.S.C. § 362(a)(1), said proceedings stayed this court's jurisdiction to render a decision on the merits to the extent such a decision might have been adverse to Defendant.

We felt free however to consider the motion to strike as it related to the non-debtor counterclaimants, Lundborg, Northern One, Community Cable and Merlin Communications which were not the subject of the concurrent bankruptcy proceedings. (Doc. # 33). On October 10, 1991 we denied Plaintiff's motion to strike the jury demand made by these non-debtor counterclaimants. (Doc. # 33). The motion was stayed as to Defendant and the remaining Counterclaimants, Cable One CATV and Merlin Cable Partners. (Doc. # 33).

Pursuant to our minute order, entered June 25, 1993 (Doc. # 94), we struck all Counterclaimants other than Defendant/Counterclaimant Sure Broadcasting from the counterclaim. Therefore, we need consider only Sure Broadcasting's Counterclaims in this order.

Pursuant to the same minute order, we struck Defendant/Counterclaimant Sure Broadcasting's counterclaims alleging interference with corporate governance, contractual breach of the covenant of good faith and fair dealing, abuse of process, and seeking declaratory relief. In a subsequent minute order entered June 28, 1993 (Doc. # 95) we also struck Defendant's counterclaims based on fraud. Therefore we need not consider these counterclaims in this order. The only counterclaims left to consider are those alleging breach of contract (second claim), negligence (third claim), and breach of the statutorily imposed duty of good faith and fair dealing (fourth claim). All other claims have been dismissed.

Until recently this court was unable to proceed on this motion. Now, however, all bankruptcy proceedings have terminated and pursuant to our minute order of December 29, 1993 (Doc. # 135) we proceed to consider and decide Plaintiff's motion to strike jury demand as to Defendant/Counterclaimant Sure Broadcasting.

### INTRODUCTION

Pursuant to the loan documents between Phoenix Leasing and Sure Broadcasting, Sure Broadcasting, agreed to waive its rights to a jury trial. In the loan agreement, the waiver is printed in capital letters and is the last paragraph, appearing directly above the signature line.

The procedural positions of Sure Broadcasting as Defendant and as Counterclaimant are slightly different. In its answer to Plaintiff's complaint, Defendant Sure Broadcasting demanded a jury trial. Sure Broadcasting also filed a compulsory counterclaim and separately demanded a jury trial as to the issues raised in the counterclaims.

The jury trial waiver states:

THE BORROWER, TO THE EXTENT THAT IT MAY LAWFULLY DO SO, WAIVES ITS RIGHT TO TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT, THE NOTE, ANY SECURITY DOCUMENTS OR ANY OTHER AGREEMENT EXECUTED IN CONNECTION HEREWITH. Borrower has been advised by counsel in connection with execution and delivery of this Agreements and the other loan documents related to this transaction.

Defendant asserts two arguments demonstrating why these waivers are invalid and should not be enforced. First, they argue that under California state law, Cal.Civ.Code § 1670.5, the jury waiver and indeed the whole loan agreement is unconscionable and should therefore not be enforced. The parties appear to be in agreement that to the extent state substantive law applies, the contracts are to be determined under California law. Secondly, Defendant asserts the right to jury trial is constitutionally guaranteed and the waiver is also invalid as a matter of federal constitutional law.

As a third argument, Defendant asserts that if the waiver is valid, that several of the counterclaims are beyond the scope of the waiver and that Defendant's affirmative defenses are also beyond the scope of the waiver and therefore such counterclaims and affirmative defenses must be determined before a jury.

Plaintiff argues that state law is entirely inapplicable and that the validity of a waiver of a constitutionally guaranteed right, such as the right to jury trial, must be determined under federal law exclusively. Plaintiff fur-

ther argues that each of the counterclaims is within the scope of the waiver and that Defendant's affirmative defenses cannot be considered as taking Plaintiff's complaint beyond the scope of the waiver and entitling Defendant to a jury trial.

## DISCUSSION

### A. FEDERAL LAW GOVERNS THE VALIDITY OF A JURY WAIVER

■ Plaintiff is at least partially correct when it asserts that the validity of contractual waivers of constitutional rights must be determined under federal law. The right to a jury trial in federal court is governed by federal law. *Simler v. Conner*, 372 U.S. 221, 221–22, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963). Although the right to jury trial in civil cases tried before federal courts is a constitutionally protected right, it may be waived by a contract knowingly and voluntarily executed. *Okura & Co. (America), Inc. v. Careau Group*, 783 F.Supp. 482, 488 (C.D.Cal.1991) citing *Leasing Service Corp. v. Crane*, 804 F.2d 828, 832–33 (4th Cir.1986).

■ As the court in *Okura* noted, the right to jury trial may be waived merely by failing to demand a jury trial within ten days of filing a pleading. Also, no abstract public policy disfavors or limits contractual waivers of the right to civil jury trial. *Okura*, 783 F.Supp. at 488 citing Fed.R.Civ.P. 38(b) & (d) and J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 38.46 (2d ed. 1985).

■ The federal standard for determining the validity of a contractual waiver of the right to jury trial requires us to determine if the waiver was knowing, voluntary and intelligent. *Standard Wire & Cable Co. v. AmeriTrust Corp.*, 697 F.Supp. 368, 375 (C.D.Cal.1988); *see also, Okura*, 783 F.Supp. at 488–89, citing *Leasing Service*, 804 F.2d at 832–33 as support for knowing, voluntary and intelligent standard.

The court in *Leasing Service*, placed the burden on the party seeking enforcement of a prelitigation contractual waiver to prove that consent to the waiver was voluntary and informed. *Leasing Service*, 804 F.2d at 833. *But see, K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir.1985) (placing burden

on party seeking to avoid contractual waiver to show consent was not voluntary and knowing). An informal survey indicates the majority of courts having considered this question followed the approach in *Leasing Service*, and furthermore the district court in *Okura*, seems to have approved of the approach outlined in *Leasing Service*. *See, Okura*, 783 F.Supp. at 488–89.

Some of the factors used to determine whether a waiver was knowing and intelligent include:

> (1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous.

*Hydramar, Inc. v. General Dynamics Corp.*, No. 85–1788, 1989 WL 159267 (E.D.Pa. December 29, 1989).

■ We begin with the last factors which appear most easily disposed of and work our way backwards.

The waiver clause was not inconspicuous. The waiver clause was printed in capital letters, whereas most of the other provisions were printed in lower case. In addition, the waiver clause is the only material contractual clause appearing on the signature page and is located directly above the signature line. There is no sense in which the waiver clause is inconspicuous. It is not buried in the fine print.

Defendant had an opportunity to negotiate some terms of the contract. The negotiation and alteration of some terms indicates that Defendant had the opportunity to negotiate the jury waiver provision. *See*, Plaintiff's Exhibit A, attached to Reply to Opposition (Doc. # 21). Significantly, Defendant does not allege let alone provide any evidence indicating that it objected to the jury waiver provision and was told it was not negotiable. Nothing indicates that Defendant had no opportunity to negotiate this provision, whereas the evidence does indicate Defendant had opportunities to negotiate the contract in general and presumably this provision also.

It is abundantly clear from many different sources that Defendant was not a novice but was in fact experienced, professional and sophisticated in business dealings. Plaintiff's Exhibit B, attached to Reply to Opposition (Doc. #21). Furthermore, all parties were represented by counsel at many different stages and it cannot be said that Defendant was anything less than competent, and fully able to look out for its interests.

■ There was some inequality of bargaining power, but not of the kind or degree necessary to invalidate the waiver provision. Defendant asserts that Plaintiff had a near monopoly within the field of start up loans for fledgling cable companies but provides no real evidence of this.

Assuming this statement to be true, it does not indicate the kind of unequal power relationship necessarily leading to a finding of inequality of bargaining power. Defendant cites the adage that "necessitous men are not free men." *Bonfield v. AAMCO Transmissions, Inc.,* 717 F.Supp. 589, 596 (N.D.Ill. 1989). However, Defendant was not in the position of necessitous men. The ability to take out a loan to start up a profit making cable company is not a necessity of life such that Defendant was compelled to accept Plaintiff's loan on whatever terms it was offered. The evidence before us does not indicate Defendant was in any difficulty or under some form of duress. Defendant/Counterclaimant Sure Broadcasting could have simply declined the offered terms. Nothing compelled Defendant to accept the loan on these terms, they were perfectly free to reject the deal. "This is not the kind of case that supports a 'necessitous men are not free men' approach. Nothing here calls on a court to rescue Defendant from a contract (or a contract term) entered into knowingly and voluntarily." *AAMCO Transmissions, Inc. v. Harris,* No. CV–89–5533, 1990 WL 83336 (E.D.Pa. June 18, 1990).

Defendant alleges that it accepted the contract as written to get badly needed funds. It does not however allege why or how it came to be in the position of necessitous men in desperate need of funds. All that is alleged is that "various impending deadlines, of which Phoenix and its counsel were well aware, transformed the situation into one where the adage that 'necessitous men are not free men' became true." This bald allegation does not refute Plaintiff's indications that the parties had substantially similar bargaining power. Furthermore, one of the cases Defendant cites, indicates that unequal bargaining position, by itself, should not invalidate an otherwise valid contractual waiver of the right to jury trial. *Bonfield v. AAMCO Transmissions, Inc.,* 717 F.Supp. 589, 596 (N.D.Ill.1989).

As Plaintiff argues, the changes made in the loan documents at borrowers' insistence are evidence that the Defendant had significant bargaining power. Plaintiff's Exhibit A indicates changes were made to the loan agreements between Phoenix and Sure. Plaintiff's Exhibit A, attached to Reply to Opposition (Doc. #21).

### B. CAL.CIV.CODE 1670.5

#### 1. Federal Law of Waiver Does Not Pre–Empt State Law of Unconscionability

■ Plaintiff argues that since federal law governs the validity of a jury trial waiver, California Civil Code Section 1670.5 is inapplicable to determining whether the waiver agreement should be enforced.

California Civil Code section 1670.5 describes the doctrine of unconscionability which applies to all contracts in California. Section 1670.5 states in relevant part:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal.Civ.Code § 1670.5(a).

"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. [citation]." *A & M Produce Co. v. FMC Corp.,*

135 Cal.App.3d 473, 186 Cal.Rptr. 114, 121 (1982).

The procedural prong of the test relating to lack of meaningful choice appears to overlap almost entirely with federal law governing the validity of a jury trial waiver. However the substantive prong relating to unreasonably favorable contract terms adds a separate and distinct element. Furthermore, "there is a sliding scale relationship between the two concepts: the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause. [Citations.]" *Carboni v. Arrospide,* 2 Cal. App. 4th 76, 2 Cal.Rptr.2d 845, 849 (1991). Thus, where substantive unconscionability is great and procedural unconscionability is slight the state concept of unconscionability provides additional protection distinct from that provided by federal law.

▇▇▇ Furthermore, by its own terms, code section 1670.5 does not make a contract or a clause within a contract invalid, but merely gives the court the option to refuse to enforce such contract or individual clause. Federal law governing the validity of a jury waiver clause and California state law regulating unconscionability of all contracts appear to regulate different things. The need to ensure the uniformity of exercise of the Seventh Amendment right to jury trial in civil matters, *Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963), does not require us to prohibit Defendant from asserting the unconscionability of the jury waiver provision under Cal.Civ.Code § 1670.5.

▇▇▇ Defendant seeks more than the protection of substantive rights under state law standards however. Pursuant to subdivision (b) of § 1670.5, whenever "it is claimed ... that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Cal.Civ.Code § 1670.5(b) (emphasis added).

Defendant claims that having raised the issue of unconscionability, it is entitled to a hearing where evidence may be presented as to the commercial setting, purpose and effect of the documents at issue so that the court may thereafter make a determination as to which portions of the various loan documents are unenforceable for unconscionability.

Nothing in the statute requires a court to provide an evidentiary hearing. All that is mandated is that "the parties **shall** be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect...." Nothing we have found in the case law—and Defendant certainly cites us to no authority—indicates that a hearing is mandated. Furthermore, if a hearing were mandated by state law, we are of the opinion such requirement would be procedural in nature and not substantive. Thus, there might be *Erie* obstacles to this court's application of the state court procedural methods for protecting the substantive state right to protection from unconscionable contract terms.

Defendant did not make optimal use of its Opposition to Motion to Strike (Doc. # 18) as an opportunity to present evidence as to the commercial setting, purpose and effect of the jury waiver provision. Nevertheless, we hold the opportunity to file an opposition to the motion to strike was an adequate opportunity to present evidence on these issues.

## 2. Jury Waiver Provision Is Not Unconscionable

We turn now to the determine whether we can find "as a matter of law that the jury waiver provision was unconscionable." Neither the statute, nor the case law explicitly indicates that either party has the burden of proof. Nevertheless, some of the cases speak in terms of the failure of a party asserting unconscionability to satisfactorily "prove" the requisite elements of a "claim" of unconscionability. *See, Premier Wine & Spirits of South Dakota Inc. v. E. & J. Gallo Winery,* 644 F.Supp. 1431, 1440 (E.D.Cal. 1986) ("The Court concludes that, as a matter of law, the procedural element of [movant's] unconscionability claim is not satisfied.") aff'd by 846 F.2d 537 (9th Cir.1988). Thus, if we were to place a "burden of proof" on any party it would be Defendant.

We decline to assign a formal burden of proof upon Defendant/Counterclaimant but merely determine whether we can find, as a matter of law, that the waiver provision was unconscionable. We cannot do so from the evidence before us.

■■■■ California's leading case on unconscionability recognizes that unconscionability has two elements, a procedural and a substantive aspect. *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 186 Cal. Rptr. 114, 121, 122 (1982).

> The procedural element focuses on two factors: 'oppression' and 'surprise.' [Citations.] 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and an 'absence of meaningful choice.' [Citations.] 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. [Citations.]

*Id.* These two elements are alternative methods of demonstrating procedural unconscionability, not conjunctive. *Id.* The substantive element focuses on the existence of an

> overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made. [Citation.]

*Carboni v. Arrospide*, 2 Cal.App. 4th 76, 2 Cal.Rptr.2d 845, 848 (1991). Both elements must be satisfied to justify a court in refusing to enforce a contractual provision as unconscionable. *Id.* at 848–49. A sliding scale however allows a strong showing of substantive unconscionability to compensate for a lesser showing of procedural unconscionability. *Id.* at 849.

■■■■ Neither of the alternative elements of procedural unconscionability are met. As discussed above, there is no evidence of an inequality of bargaining power resulting in no meaningful choice for the weaker party. While there may have been some disparity between the relative bargaining strengths, it has not been demonstrated to this court that Plaintiff occupied a position of such strength that Defendant had no meaningful choice but to accept loan terms as they were dictated by Plaintiff.

■■■■ Surprise refers to the situation which occurs when the disputed term of a contract is hidden in a prolix agreement. *A & M Produce*, 186 Cal.Rptr. at 122. Again we covered substantially the same element in the discussion of federal law. The waiver term is clear, and conspicuous. Furthermore, Defendant was represented by counsel and was a sophisticated business entity. There was no surprise.

■■■■ Assuming Defendant made some showing of procedural unconscionability we will proceed to determine whether we could hold as a matter of law that the jury waiver provision was substantively unconscionable. It would seem nearly impossible to do so. There is no presumption that a trial to a court is unconscionably more favorable to a lender than a trial to a jury. As a matter of law, it would seem that we should be precluded from entering a finding that a trial to a court rather than a jury favors any party in any degree.

It may be true as Defendant asserts that "[i]t is common knowledge that a lender would rather open its vault to the homeless than submit its claim to a jury...." Nevertheless we refuse to hold, as a matter of law, that a jury waiver provision provides any advantage to any party, let alone an unconscionable advantage. There is no substantive unconscionability in the jury waiver provision.

■■■■ Defendant asserts the unconscionability of other provisions of the loan agreements in their opposition. An opposition to another party's motion is not the proper place to raise one's own motions. If Defendant desires a determination of the unconscionability of other contractual provisions they may raise that issue on their own motion, but not in an opposition.

## C. SCOPE OF THE JURY WAIVER PROVISIONS

The jury waiver provision contained in each of the three loan agreements is valid, enforceable and are not unconscionable. We

must now determine the scope of the jury waiver provisions. Each waiver is identical and extends to "any action brought on or with respect to this agreement [the loan agreement] the note, any security documents or any other agreements executed in connection herewith."

An action brought "on the loan agreements" would be any claim seeking to enforce a right created by the loan documents or specifically acknowledging the validity of the loan agreement and asserting a claim whose success depends on the validity of the loan agreements.

An action brought "with respect to this agreement" obviously has a greater reach. However we must determine what exactly that reach is. Furthermore, jury waivers are to be narrowly construed and any ambiguity is to be decided against the waiver. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 503–504, 79 S.Ct. 948, 952–53, 3 L.Ed.2d 988 (1959); *Nat. Acceptance Co. v. Myca Products, Inc.,* 381 F.Supp. 269, 270 (W.D.Pa.1974); *Nat. Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977).

The phrase "with respect to" means with reference to, relating to, or pertaining to. *International Milling Co. v. United States,* 27 F.Supp. 592, 597 (Ct.Cl.1939); *In re Weyerhaeuser Timber Co.,* 53 Wash.2d 235, 332 P.2d 947, 949 (1958).

### 1. But for Test is Incorrect

Plaintiff asserts that a "but for" test is the proper method for determining if a particular claim is "with respect to" the loan agreements. Specifically, Plaintiff argues that any claim which would not have arisen "but for" the loan agreements should be subjected to the jury waiver provision.

This is far too broad a proposition. A single example illustrates the ridiculous extent to which this would reach. If Defendant had a question regarding a provision of the contract and decided to go to Plaintiff's place of business to discuss the question and slipped and fell on Plaintiff's freshly waxed floors, any injury suffered would not have occurred "but for" the loan agreement. Thus Plaintiff argues it should be subjected

to the jury waiver. It is too clear for explanation that any suit arising from such slip and fall would not be an action "on or with respect to" the loan agreement. Such an action could be decided without any reference to the loan agreement, without interpreting the loan agreement and without determining the legal effect of the loan agreement.

If determination of an action would require reference to, or if the action relates to or pertains to the loan documents covered by the waiver, then such action is "with respect to" the loan documents and the jury waiver provision applies.

### 2. Plaintiff's Complaint & Defendant's Affirmative Defenses

All three of Plaintiff's claims for relief are brought on or in respect to the loan agreement. Plaintiff's first claim seeks recovery on the loan agreement and promissory note. No further discussion is needed to demonstrate that the waiver provision applies to this claim.

Plaintiff's second claim is for money paid. This claim seeks the recovery of money advanced or paid to Sure by Phoenix. While this claim is not "brought on the loan agreement" it is brought in respect to the loan agreement. Determining whether the money given to Sure by Phoenix was a gift, or to pay back debts owed by Phoenix and whether Phoenix breached any contractual provisions entitling Sure to keep the money paid requires us to refer to the loan agreement. This claim necessarily requires reference to the loan agreement in order to allege and prove that the money was paid as a loan and that Plaintiff is entitled to return of the money paid.

Plaintiff's third claim is for Recovery of Personal Property (Claim and Delivery). This claim asserts Plaintiff's entitlement to certain property pledged as collateral by Sure pursuant to the Security Agreement. The security agreement was specifically subordinated to the jury waiver provision. This claim is directly on the security agreement and is therefore subject to the jury waiver.

■ Defendant asserts that several of its affirmative defenses do not relate in any way the loan, or security agreements or the note. This however does not entitle Defendant to a Jury trial with regard to those affirmative defenses. The jury waiver applies to **"any action,"** not to "any complaint."

The term "action," "in its usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law. The legal and formal demand of one's right from another person or party made and insisted on in a court of justice.... It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court." BLACKS LAW DICTIONARY 13–15 (Abridged 5th ed. 1983).

■ The action includes within it, Defendant's defenses. An action is not composed of two separate elements: Plaintiff's case and Defendant's affirmative defenses. If we were to agree with Defendant's position that affirmative defenses are not part of the same action as Plaintiff's claims, there would be nothing to prevent any Defendant from presenting its affirmative defenses to state court to litigate them there. Plaintiff's action necessarily includes all affirmative defenses raised against it. Black's Law Dictionary lists no such entity as an "affirmative defense action."

### 3. Counterclaims

■ Defendant filed several compulsory counterclaims against Plaintiff. Although a compulsory counterclaim is any counterclaim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" (Fed.R.Civ.P. 13(a)), it does not necessarily follow that any compulsory counterclaim would by definition be "with respect to" the agreements subjected to the jury waiver which are the subject matter of Plaintiff's claims. We proceed to determine whether each counterclaim is on or with respect to any of the loan agreements or documents.

We note that we are merely reviewing each counterclaim to determine whether it arises on, or with respect to any of the loan agreements. We express no opinion regarding whether these counterclaims are adequately pleaded and would survive motions to dismiss or whether these counterclaims would survive motions for summary judgment.

### a. Second Claim

■ In this counterclaim it is alleged that Phoenix breached the loan agreements with Sure. This action, for breach of contract, is directly on the loan agreements and therefore within the scope of the jury waiver.

### b. Third Claim

■ Here it is alleged that Phoenix was negligent in failing to fulfill certain duties arising out of the contract such as the duty of good faith and other duties arising out of the contractual relationship. Since the duties were created by and flowed from the creation of a contractual relationship it would appear that the breach of these duties necessarily refers to the various contracts which created these duties. Counterclaimant does not allege the existence of any contracts or other relationship which could give rise to such duties other than the contracts subject to the jury waiver provision. This claim is "with respect to" the loan documents and the other agreements subject to the jury waiver provision and therefore this claim is subject to the jury waiver provision.

Furthermore, several of the "negligent" acts complained of are merely breaches of the terms of the loan agreements which are pleaded as "negligent" acts. Thus, several of the "negligent" acts complained of are directly on the loan agreement.

### c. Fourth Claim

■ Defendant/Counterclaimant Sure specifically pleads Phoenix breached the duty of good faith and fair dealing implied into every contract in California by Cal.Civ.Code § 1203. Defendant alleges this duty extended to the execution, performance, administration, and enforcement of all contracts between it and Phoenix. This claim is directly

on the contract. The duty of good faith is implied into the contract. Therefore it is a part of those contracts. The only contracts alleged are subjected to the jury waiver provision. Even if this claim is not directly on the contracts, it certainly is "with respect to" them.

## CONCLUSION

The jury waiver provision included in all the loan agreements is constitutionally valid. The waiver was knowing, intelligent and voluntary. Furthermore, the jury waiver provision is not unconscionable under Cal.Civ. Code § 1670.5. Therefore the jury waiver provision is effective to deny Defendant a jury trial as to all actions within the scope of the waiver.

All Plaintiff's claims are within the scope of the jury waiver and Defendant's affirmative defenses are not entitled to a separate jury trial. Therefore Plaintiff's complaint will be litigated in its entirety before a court sitting as the fact finder without a jury.

The counterclaim filed (Doc. # 5) by Defendant/Counterclaimant Sure Broadcasting has been partially dismissed and only counterclaims two (2), three (3) and four (4) remain. Counterclaims two (2), three (3), and four (4), alleging breach of contract, negligence and breach of the statutory duty of good faith and fair dealing respectively are entirely within the scope of the jury waiver provision and Defendant is not entitled to a jury trial as to those claims.

**IT IS, THEREFORE, HEREBY ORDERED that** Plaintiff's Motion to Strike Jury Demand (Doc. # 12) is **GRANTED** as to each of the remaining counterclaims. Trial as to counterclaims two (2), three (3) and four (4) shall be to the court.