[DO NOT PUBLISH]

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-16197

_____

D.C. Docket No. 02-23434-CIV-PCH

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 6, 2006
THOMAS  K. KAHN
CLERK

BAKRAC, INC., d.b.a. Ponce De Leon Hotel,

Plaintiff-Counter
Defendant-Appellant,

SAVNI BAKRAC,

Plaintiff-Appellant,

versus

VILLAGER FRANCHISE SYSTEMS, INC.,

Defendant-Counter
Claimant-Appellee,

CENDANT CORPORATION,
KENNETH RODGERS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 6, 2006)**

Before CARNES and COX, Circuit Judges, and MILLS[*], District Judge.

RICHARD MILLS, District Judge:

## I. BACKGROUND

This case sounds in contract.

Savni Bakrac ("Bakrac") is the sole owner of Bakrac, Inc., a company that consists of three St. Petersburg, Florida hotels. A college graduate who majored in mechanical engineering, Bakrac began his company in 1988 after immigrating from Yugoslavia.

Bakrac had operated the company for over eleven years when Village Franchise Systems, Inc. (a Cendant Corporation) contacted him about a franchise opportunity. At the time, Kenneth Rodgers was Village Franchise Systems, Inc.'s (hereinafter "VFS") president and Ronald Murray was a company official. According to Bakrac, VFS salesperson Brad Smith met with him and promised: a low interest loan; a free "state of the art" reservation management/cash intake system; a 70% occupancy rate; management training and on-site new property training; adequate marketing, advertising, promotion, and publicity; and multiple termination rights. Smith allegedly made these promises in March 1999.

---

[*] Honorable Richard Mills, United States District Judge of the Central District of Illinois, sitting by designation.

About a week after meeting with Smith, VFS mailed Bakrac a copy of its Uniform Franchise Offering Circular ("UFOC"). The UFOC contained a mandatory Federal Trade Commission warning which stated:

> TO PROTECT YOU, WE'VE REQUIRED YOUR FRANCHISOR TO GIVE YOU THIS INFORMATION. . . . STUDY IT CAREFULLY. WHILE IT INCLUDES SOME INFORMATION ABOUT YOUR CONTRACT, DON'T RELY ON IT ALONE TO UNDERSTAND YOUR CONTRACT. READ ALL OF YOUR CONTRACT CAREFULLY. BUYING A FRANCHISE IS A COMPLICATED INVESTMENT. TAKE YOUR TIME TO DECIDE. IF POSSIBLE, SHOW YOUR CONTRACT AND THIS INFORMATION TO AN ADVISOR, LIKE A LAWYER OR ACCOUNTANT.

Bakrac did not read any part of the UFOC other than the cover page. Had he done so, he would have found that he was required to purchase a computer system and software, he did not qualify for an interest-free loan, and VFS's average occupancy rate was 57.43%.

Despite failing to read the UFOC, Bakrac was skeptical about Smith's promises. He contacted a VFS affiliate in Lakeland, FL ("Villager Lakeland") to investigate Smith's 70% occupancy pledge. Villager Lakeland could not confirm an occupancy rate, but stated that it was "very busy." Bakrac took no additional steps to verify Smith's claims.

Bakrac's doubts persisted and he repeatedly asked Smith to put VFS's

promises in writing. In May 1999, Bakrac insisted on having an addendum to the

franchise agreement. The Addendum was created because, Bakrac "didn't trust

some stuff so [he] wanted to have it in writing." The Addendum provided a

reduced initial franchise fee, reduced royalty fees, a $4,000 royalty credit, and

multiple no-penalty termination rights.

After the Addendum was created, Bakrac executed a copy of the Addendum,

a Franchise Agreement, an Integrated Systems Agreement, and a Software and

Services Agreement. The Franchise Agreement included a "Waiver of Jury Trial"

which stated:

> The parties waive the right to a jury trial in any action related to this
> Agreement or the relationship between the franchisor, the franchisee,
> any guarantor, and their respective successors and assigns.

The Franchise Agreement also contained the following integration clause:

> Neither [VFS] nor any person acting on our behalf has made any oral
> or written representation or promise to you on which you are relying
> on to enter into this Agreement that is not written in this Agreement.
> You release any claim against us or our agents based on any oral or
> written representation or promise not stated in this Agreement.
>
> This Agreement, together with the exhibits and schedules attached, is
> the entire agreement superseding all previous oral and written
> representations, agreements, and understandings of the parties about
> the Facility and the License.
>
> You acknowledge that no salesperson has made any promise or
> provided any information to you about projected sales, revenues,

income, profits or expenses from the Facility except as stated in Item
19 of the UFOC or in a writing that is attached to this Agreement.

Item 19 merely noted that while VFS's average occupancy rate is 57.43% and that

VFS does not guarantee an occupancy rate.

Bakrac spent $80,000 re-making his hotels into Villager hotels. VFS did

not provide him with a low interest loan, on-site training, or anything else that

Bakrac believed VFS to have promised to him. By November 2002, Bakrac had

become so disturbed with VFS, he stopped complying with the Franchise

Agreement. In December 2002, VFS informed Bakrac and Bakrac, Inc. that they

were required to pay $93,600.00 in liquidated damages and $41,602.94 in other

damages because they prematurely terminated the Franchise Agreement. Bakrac

and Bakrac, Inc. responded by filing a mail fraud claim against VFS pursuant to

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §

1961 *et seq*. According to Bakrac and Bakrac, Inc., VFS made promises it never

intended to keep.

Upon VFS's motion, the district court found that the record evidence

showed Bakrac and Bakrac, Inc. validly waived their right to jury trial. VFS

counterclaimed for breach of contract and moved for summary judgment motion

on Plaintiff's RICO claim. Bakrac and Bakrac, Inc. tried to defeat the summary

5

judgment motion by arguing that genuine issues of material fact were created via VFS's oral promises and the promises contained in the Addendum. However, Bakrac and Bakrac, Inc. failed to offer a single affidavit, deposition, or other type of evidence to support their position.

The district court found that the parol evidence rule barred the admission of those promises and entered summary judgment in VFS's favor. The case then went to bench trial for the sole purpose of determining damages. The district court held that Bakrac and Bakrac, Inc. were jointly and severally liable to VFS. Bakrac and Bakrac, Inc. timely appealed.

## II. ANALYSIS

We review the district court's rulings on motion for summary judgment de novo, applying the same legal standards that bound the district court. National Fire Insur. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1267 (11th Cir.2003). "The standard of review for a motion of summary judgment is whether a genuine issue exists as to any material fact and whether the moving party is entitled to judgment as a matter of law." Sarfati v. Wood Holly Associates, 874 F.2d 1523, 1525 (11th Cir.1989); Fed.R.Civ.P.

### A.    Jury Trial Waiver

A party may validly waive its Seventh Amendment right to a jury trial so

long as the waiver is knowing and voluntary.  See Brookhart v. Janis, 384 U.S. 1, 4, 5, 86 S.Ct. 1245, 1246, 1247, 16 L.Ed.2d 314 (1966); see also Leasing Service Corp. v Crane, 804 F.2d 828, 833 (4th Cir. 1986)[1].  In making this assessment, courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable.  See Crane, 804 F.2d at 833; See Whirlpool Financial Corp. v. Savaux, 866 F.Supp. 1102 (N.D.Ill. 1994).

In this case, Bakrac's ability to negotiate an Addendum indicates that the contract was negotiable.  The waiver was conspicuously set forth in the Franchise Agreement in large type and plain language.  Bakrac was a college-educated mechanical engineer who had eleven years experience as a hotel operator.  There is no indication that Bakrac was under duress or that VFS pressured him to sign the Franchise Agreement.  VFS merely offered Bakrac what he thought was a good deal and he had plenty of time to consider the terms.  Under these

---

[1] The circuits are split as to which party has the burden of proving whether a contractual jury trial waiver, such as the one here, was knowing and voluntary. See Pierce v. Atchison Topeka & Santa Fe Ry. Co., 110 F.3d 431, 435 n. 4 (7th Cir.1997) (collecting cases).  Although this Circuit has not ruled on the matter, the district court put the burden on VFS.  The district court's approach is consistent with the approach used in Luis Acosta, Inc. v. Citibank, N.A., 920 F.Supp. 15, 18 (D.P.R.1996) (party seeking to enforce the waiver bears the burden).  We need not determine whether this is the correct approach.  VFS prevails regardless of who has the burden.

circumstances, one must conclude that Bakrac knowingly and voluntarily waived his right to a jury trial.

**B.      VFS's Summary Judgment Motion**

A plaintiff must prove the following elements to establish liability under the federal mail and wire fraud statutes:  (1) that defendants knowingly devised or participated in a scheme to defraud the plaintiff(s); (2) that the defendants did so willingly with an intent to defraud; and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme.  See Langford v. Rite Aid of Alabama, Inc., 231 F.3d 1308, 1313 (11th Cir. 2000).  To determine if conduct is fraudulent, the Court looks to state law.  See Pelletier v. Zweifel, 921 F.2d 1465, 1503 (11th Cir. 2003).  Because the Franchise Agreement's choice of law provision designated New Jersey law as binding authority, the Court relies on New Jersey precedent.  Thus, to establish fraud, Bakrac and Bakrac, Inc. must show a material misrepresentation of a presently existing or past fact; knowledge or belief by the defendant of its falsity; an intention that the other person rely on it; reasonable reliance thereon by the other person; and resulting damages.  See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624, 432 A.2d 521 (1981)).

Bakrac and Bakrac, Inc. claim that VFS defrauded them by not providing

them with things it promised to them orally and in the Addendum (*i.e.* loans, training, etc.). Under New Jersey law,

> "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

See Filmlife, Inc. v. Mal"Z" Ena, Inc., 251 N.J.Super. 570, 573 (App.Div.1991).

In this case, neither loans, nor training, nor occupancy rates were promised in the Franchise Agreement. Therefore, Bakrac and Bakrac, Inc. could not prevail on any of their claims.

## III. CONCLUSION

For the reasons stated above, the district court's decision is AFFIRMED.

9