David L. **ALLYN**, M.D., individually, **Robert Thompson**, individually, **Susan L. Thompson**, individually, **Clermont Professional Center, LLC**, a Florida limited liability company, **Plaintiffs**,

v.

**WESTERN UNITED LIFE ASSURANCE COMPANY**, a Washington corporation, **Metwest Mortgage Services, Inc.**, a Washington corporation, **Old Standard Life Insurance Company**, a Washington corporation, **Project Disbursement Group, Inc.**, a Nevada corporation, etc., et al., **Defendants**.

No. 5:04–cv–212–Oc–10GRJ.

United States District Court,
M.D. Florida,
Ocala Division.

Dec. 10, 2004.

Charles W. Sell, Grayrobinson, P.A., Jeffrey Scott Boyles, Stephen D. Milbrath, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, FL, Loan B. Kennedy, Swann & Hadley, P.A., Winter Park, FL, for Plaintiffs.

Edmund T. Baxa, Jr., Foley & Lardner, Kevin A. Reck, Serita M. Duhart, Foley & Lardner LLP, Mark C. Filburn, Ruden McClosky Smith Schuster & Russell, P.A., Orlando, FL, Mark J. Wolfson, Foley & Lardner, Tampa, FL, for Defendants.

### ORDER

JONES, United States Magistrate Judge.

Pending before the Court are Western United Life Assurance and Old Standard Life Insurance Companies' Motion to Strike Plaintiffs' Jury Trial Demand (Doc. 5), Motion to Strike Immaterial and Impertinent Matters from the Complaint (Doc. 6), and Motion to Strike Plaintiffs' Jury Trial Demand on Western United's Counterclaim. (Doc. 19.) As Plaintiff has filed responses to each motion (Docs. 12, 14 & 24), the matter is now ripe for the Court's review. For the reasons discussed below, Defendants' Motions to Strike Jury Trial Demand (Docs. 5 & 19) are due to be **GRANTED**, and Defendants' Motion to Strike Immaterial and Impertinent Matters from the Complaint (Doc. 6) is due to be **DENIED** as **MOOT**.

### I. BACKGROUND & FACTS

According to the allegations in the Amended Complaint (Doc. 62), Plaintiff Clermont Professional Center, LLC, ("CPC") purchased a 24 acre-tract of land in Clermont, Florida, upon which it planned to construct a medical office complex and outpatient surgery center where medical professionals could purchase or lease office space and provide their services to the communities of Lake County.

Construction on the various buildings in the project was nearing completion and several sales and leases had been entered into with medical professionals when CPC's funding ceased in December 2003. As a consequence, construction was halted, prospective tenants cancelled their agreements, the general contractor walked off the site, and medical equipment remained uninstalled and idle. Plaintiffs allege that all of this occurred because Defendants failed to fulfill their contractual obligation to disburse loan proceeds as promised.

Defendant Western United Life Assurance Company ("Western United") is a Washington corporation and Old Standard Life Insurance Company ("Old Standard") is an Idaho corporation, both doing business in Florida as financial lenders. Metwest Mortgage Services, Inc. ("Metwest") is a Washington corporation doing business in Florida as a loan servicing agent. Plaintiffs maintain that Western, Old Standard, and Metwest are related companies that act as a "financial team" in the commercial lending industry.[1] Finally, Project Disbursement Group, Inc. ("PDG") is a Nevada corporation doing business in Florida as an entity controlling and disbursing construction funds for real estate development projects.

CPC contracted with Western United for a loan in the amount of $9,750,000.00 in return for a first mortgage, security agreement, fixture filing, assignment of rents, and a promissory note.[2] Defendant Metwest was to service the loan, and PDG was to disburse the loan proceeds from Western United to the CPC project.[3] David Allyn, M.D., a member and director of

1. Amended Complaint, Doc. 62 at ¶ 8.

2. *Id.* at ¶¶ 26–36.

3. Simply put, "Old Standard promised CPC a construction loan. Western promised to fund

the construction loan. Metwest promised to service the loan. Project Disbursements promised to distribute the loan proceeds." *Id.* at ¶ 14.

CPC, and Robert and Susan Thompson, also members of CPC, executed separate continuing guaranty agreements on behalf of CPC.

Ultimately, CPC's draw requests were not timely met, and by December of 2003, all disbursements came to an end. Plaintiffs filed the instant law suit shortly thereafter, claiming that Defendants knew or should have known at the time the loan documents were executed that Defendants would not be able to fulfill their obligations.[4] In their 5–count Amended Complaint, Plaintiffs assert claims for breach of agreements, breach of duty of good faith, rescission, fraud, and negligent misrepresentation.[5]

## II. *ARGUMENTS REGARDING JURY TRIAL WAIVER*

In their motions to strike Plaintiffs' Jury Trial Demand,[6] Defendants Western United and Old Standard contend that Plaintiffs cannot make such a demand because they expressly waived the right to a jury trial in the loan documents at issue. Specifically, Defendants point to three main loan documents executed by Plaintiff David Allyn on behalf of CPC—a First Mortgage, a Promissory Note, and a Development Loan Agreement—which contain identical jury trial waiver provisions in enlarged font above the signature lines.[7] Defendants also point out that David Allyn, Robert Thompson, and Susan Thompson, the three individual Plaintiffs in this suit who guaranteed loan repayment on behalf of CPC, also signed individual Continuing Guaranty Agreements ("the Guaranties") which likewise contained jury trial waivers in enlarged font near the end of the agreements.[8]

As to any claim of fraudulent inducement by Plaintiffs with respect to the jury trial provisions in the loan documents and guaranties, Defendants charge that Plaintiffs have not supplied any allegations whatsoever as to whether their assent to the waiver as opposed to their assent to the overall loan and guaranties was procured by fraud.

In response to Defendants' arguments, Plaintiffs maintain that they have adequately and particularly detailed in their complaint "a complex scheme of fraudulent behavior that casts a shadow on every negotiation and agreement reached between the parties," including the agreement to waive the right to a jury trial.[9]

---

4. According to the Amended Complaint, Western's parent company, Metropolitan Mortgage & Securities, Inc., was in financial distress and often "tapped" Western for money transfers. In February of 2004, Metropolitan Mortgage filed for bankruptcy protection, and Western was placed in receivership shortly thereafter.

5. On October 26, 2004, the Court entered an Order which granted in part and denied in part Defendants' motions to dismiss the original complaint. The Court dismissed the counts 3, 4 & 5 because they were premised on allegations of fraud which failed to comply with F.R. Civ. P. 9(b). However, the Court permitted Plaintiffs an opportunity to amend to correct the pleading deficiencies. Plaintiffs' Amended Complaint reasserts the same counts as the original Complaint.

6. Defendants' Motion to Strike Plaintiffs' Jury Trial Demand on Western United's Counterclaim (Doc. 19) asserts that Plaintiffs' request for a jury trial in their Answer and Affirmative Defenses (Doc. 11) should also be denied for the reasons set forth in Defendants' Motion to Strike Plaintiffs' Jury Trial Demand. (Doc. 5.)

7. *See* Complaint, Doc. 2, Exs 1–3.

8. *See* Complaint, Doc. 2, Exs. 4–6.

9. Pointing to the allegations in their Complaint, Plaintiffs contend that the waiver itself was not consented to knowingly, voluntarily, and intelligently, primarily due to Defendants' fraudulent activities. *See* Plaintiffs' Memorandum in Opposition to Motion to

According to Plaintiffs, Defendants' fraud invalidates the waiver provision itself. Furthermore, Plaintiffs contend that the waiver is not enforceable because it was not made knowingly, voluntarily, and intelligently.[10] Finally, Plaintiffs maintain that the contractual waiver, if any, is not enforceable against non-parties to the relevant agreements.[11]

On August 23, 2004, the Court entertained oral argument regarding the validity and enforceability of the jury trial waiver provisions. During the course of the hearing, the parties essentially elaborated on the issues raised via their motions and responses addressing the issue. Plaintiffs argued that where assent to enter into an entire contract is procured by fraud, the jury trial waiver along with the entire contract is unenforceable. Alternatively, if the Court were not to reach the same conclusion, Plaintiffs contended that the jury trial waiver is unenforceable because the provision itself was procured by fraud and because Plaintiffs did not assent to the waiver knowingly, voluntarily, and intelligently.

Defendants responded that Plaintiffs have failed to plead fraud with the level of particularity required by F.R. Civ. P. 9(b) as to whether the jury trial waiver was procured by fraud. Defendants also argued that there is ample evidence of record showing that each and every Plaintiff assented to the waiver knowingly, voluntarily, and intelligently.

---

Strike, Doc. 24, pp. 13–14. "It is believed that Defendants knew [and failed to disclose to Plaintiffs] that they were both in financial difficulty; ... that Defendants needed to book immediate year-end profits; ... that Defendants had knowledge that their parent company would appropriate funds from Western making construction funding difficult or impossible; ... that Defendants violated certain loan guidelines allowed by both the banking and insurance industries in terms of Defendants' lending." *Id.*

**10.** Plaintiffs argue that they were "compelled to enter into a standardized agreement without negotiation of, or even an opportunity to negotiate, the waiver term due to time and financial constraints. Defendants were well aware that the Plaintiffs were in desperate need of financing to move forward on the project or risk forfeiting years of effort and struggle to develop the valuable land into a much needed health care facility. The lack of bargaining power by Plaintiffs is evident in the fact that they accepted a loan with an interest rate of 13%—far higher than the prevailing rate ..." *See* Plaintiffs' Memorandum in Opposition to Motion to Strike, Doc. 24, p. 12. Plaintiffs also maintain that they are not full time real estate developers and the "agreements of the type involved in this project, drafted by Defendants, were not matter of course for Dr. Allen or the other Plaintiffs." *Id.*

**11.** Defendants have filed a counterclaim against Sandeep Bajaj and IB Enterprise, LLC. (Doc. 8.) According to the allegations in the counterclaim, Bajaj is a resident of Orange County Florida and IB is a limited liability company with its principal place of business in Orange County, Florida. Defendants have sued Bajaj and IB solely as junior lienholders to foreclose their interest in the property. Apparently, CPC entered into a mortgage and security agreement with Bajaj on February 27, 2004 in violation of the terms and conditions of the Promissory Note, First Mortgage, and Loan Agreement. Bajaj assigned the mortgage to IB which was recorded on March 19, 2004. Defendants request a declaration that their mortgage interest is superior to any held by Bajaj and IB. Plaintiffs argue that because Bajaj and IB were not parties to the agreements between CPC et al. and Western United et al., the waivers in the agreements are not enforceable against Bajaj or IB. This argument is without merit because the only claim against Bajaj and IB by Defendants is the count for mortgage foreclosure, which is wholly equitable in nature and in which there is no right to a jury trial by Bajaj or IB. Thus, while Bajaj and IB are not subject to the jury waiver in the loan documents, they do not have a right to a jury trial in any event in the mortgage foreclosure counterclaim.

In light of the scant evidence of record at the time of the hearing, the Court permitted the parties to file and serve sworn affidavit testimony in support of their positions regarding the enforceability of the jury trial waiver. (Doc. 49.) Since the hearing, the parties have done so. (Docs. 50, 51, 52, 53, 54, 55 & 56.) Upon review of the documents submitted by the parties, and in light of the arguments advanced by both parties, the Court finds that the jury trial waivers are fully enforceable against all Plaintiffs in this matter.

## II. *DISCUSSION*

It is well settled that the right to a jury trial in federal courts is to be determined by federal law in diversity actions.[12] The question of whether the right has been waived is likewise governed by federal law.[13] Although the Eleventh Circuit has not squarely addressed the validity of contractual jury trial waivers,[14] other courts have found them to be valid, given certain conditions, which are discussed below.[15]

### A. *Plaintiffs Knowingly, Voluntarily, and Intelligently Waived Right to Jury Trial*

Where a jury trial waiver is claimed under a contract executed before litigation, it must be shown that the waiver was assented to knowingly, voluntarily, and intelligently.[16] As Defendants correctly point out, the Eleventh Circuit has not spoken on whether the party seeking to enforce the waiver or the party opposing the waiver bears the burden of proving the validity of the waiver itself. Circuit courts appear to be split on the issue.[17] In re-

---

**12.** *See Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963)("Only through a holding that the jury trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved.") *Accord Ford v. Citizens & Southern National Bank Cartersville,* 928 F.2d 1118, 1121 (11th Cir.1991) ( [the right is determined by federal law] "even though the 'substantive dimension' of a claim brought in federal court may be governed by state law.")

**13.** *Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1577 (11th Cir.1990) *Citing Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691(1963). The Eleventh Circuit has instructed that waivers of valid jury demands are not to be lightly inferred and "should be scrutinized with utmost care." *Haynes v. W.C. Caye & Co., Inc.,* 52 F.3d 928, 930 (11th Cir.1995).

**14.** *Accord Fleet National Bank v. Dittman,* 1992 U.S. Dist. LEXIS 17292 (S.D.Ala.1992).

**15.** *See Pers Travel, Inc. v. Canal Square Associates,* 804 A.2d 1108, 1111 (D.C.2002)("It is clear that the parties to a contract may by prior written agreement waive the right to a jury trial ... It is also generally accepted that a voluntary waiver of the right to a jury trial suffers no inherent constitutional or legal infirmity.") *See Also Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837–38 (10th Cir. 1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182(1989); *Leasing Service Corp. v. Crane,* 804 F.2d 828, 832–33 (4th Cir.1986); *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 755–58 (6th Cir.1985); *In re Reggie Packing Co., Inc.,* 671 F.Supp. 571, 573–74 (N.D.Ill.1987); *Bonfield v. AAMCO Transmissions, Inc.,* 717 F.Supp. 589, 595 (N.D.Ill. 1989); *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 667 (S.D.N.Y.1991).

**16.** *Fleet, supra,* note 14, at *7. *Citing Bonfield v. AAMCO Transmissions, Inc.,* 717 F.Supp. 589, 595 (N.D.Ill.1989) *and National Westminster Bank, U.S.A. v. Ross,* 130 Bankr.656, 667 (S.D.N.Y.1991).

**17.** *See Leasing Service Corp. v. Crane,* 804 F.2d 828, 832–33 (4th Cir.1986)(Party seeking enforcement of waiver of right to jury trial which is claimed under contract executed before litigation is contemplated must prove that consent was both voluntary and informed.) *Accord National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2nd Cir. 1977). *But See K.M.C. Co., Inc. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir.1985)(burden is on party seeking to invalidate waiver).

solving the instant dispute, however, the Court need not conclude who is put to the task of carrying the burden because the facts of this case—as articulated by both parties—demonstrate that Plaintiffs did indeed waive their right to a jury trial knowingly, voluntarily, and intelligently.

■■■ Courts consider a number of factors when determining whether a contractual jury trial waiver was entered into knowingly, voluntarily, and intelligently. Those factors include: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel.[18] Although the factors play an important role in the Court's decision-making process, they are not determinative. Put another way, it is not whether any particular number of factors have been satisfied, but whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair.[19]

Here, the record demonstrates that the right to a jury trial was knowingly, voluntarily, and intelligently waived by each Plaintiff. As an initial matter, the jury trial waivers contained in the loan documents and each of the guaranties were completely conspicuous. The signature

page of the Loan Agreement,[20] and the First Mortgage, Security Agreement, Fixture Filing, and Assignment of Rents[21] bear the following clause which is set forth in its own paragraph in boldface, uppercase font (unlike the remainder of the text):

LENDER AND BORROWER HEREBY WAIVE THE RIGHT
TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER LENDER OR BORROWER AGAINST THE OTHER.

David Allyn, director and managing member of CPC, inserted his signature just inches below this provision.[22]

Similarly, the jury trial waivers in the guaranties[23] are in a section entitled "jury waiver." The provisions are in large font (unlike the remainder of the text), and are located at the last numbered paragraph near the very end of the agreement. They provide, in pertinent part, that:

GUARANTOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION . . . [.]

Each guarantor, David Allyn, Robert Thompson, and Susan Thompson, inserted his or her signature on the page following this provision.

**18.** *See Phoenix Leasing, Inc. v. Sure Broadcasting, Inc.,* 843 F.Supp. 1379, 1384–1385 (D.Nev.1994); *Whirlpool Financial Corp. v. Sevaux,* 866 F.Supp. 1102, 1105 (N.D.Ill., 1994) *Judgment Affirmed by Whirlpool Financial Corp. v. Sevaux,* 96 F.3d 216 (7th Cir. 1996)

**19.** *Pers Travel, supra,* note 15, at 1111.

**20.** *See* Western United's Counterclaim, Doc. 8, Ex. 1, Development Loan Agreement.

**21.** *Id.,* Ex. 3, First Mortgage, Security Agreement, Fixture Filing, and Assignment of Rents, executed September 30, 2003.

**22.** Allyn signed with full approval of all CPC members, including Susan and Robert Thompson. *See* Doc. 52, Affidavit of Susan and Robert Thompson.

**23.** *See* Plaintiffs' Complaint, Attached Exhibits.

Therefore, it is clear that the waiver provisions at issue were not buried in the text of the documents which the Plaintiffs executed. Nor were the provisions either cryptic or ambiguous in nature. Rather, the waiver provisions were sufficiently straightforward, understandable, and conspicuous as to allow Plaintiffs to be aware of them, to read them,[24] and to appreciate their meaning.

The record also demonstrates that Plaintiffs—the parties who now seek to invalidate the waiver provisions at issue—comprise a group of well-educated and industrious individuals who have shown an appreciable level of sophistication in real estate and business transactions. CPC was formed "with the goal of establishing a medical center in Clermont, Florida."[25] Its members and their background reflect that purpose.

David Allyn is a forty-four (44) year old doctor of medicine who has earned a master's degree at Tufts University in 1987 and an M.D. at Case Western Reserve University in 1991.[26] He has published and researched extensively and has also taught as a college professor. Robert Thomas, who was approached by Allyn to join CPC in 1999,[27] is a fifty-five (55) year old licensed real estate broker and state certified residential contractor. Although he presently works as a real estate broker and developer, he has also worked as a mortgage loan officer, bank branch manager, co-owner and president of a construc-

tion and development company, and co-partner of an investment group.[28] It is therefore fair to characterize Plaintiffs as well-educated and sophisticated individuals.

Moreover, before entering into the loan agreements with Defendants, Plaintiffs executed four loan agreements with four different lenders and all of the loan agreements contained jury trial waiver provisions like those presently at issue.[29] At the very least, this pattern of assent to the waiver provisions in other loan transactions shows that CPC members dealt with documents such as those at issue on several prior occasions and showed no aversion to consenting to the jury trial waiver during each of those occasions. In addition, the record discloses that Plaintiffs entered into a loan agreement with Sandeep Bajaj on February 27, 2004—several months *after* their agreement with Defendants.[30] Again, the Bajaj mortgage contained a jury trial waiver provision essentially identical to those at hand. All of these facts support a finding of a valid waiver.

Furthermore, Plaintiffs in this action not only had bargaining power during the course of their dealings with Defendants, but also exercised that power in negotiating terms of the loan agreement with Defendants. In a letter dated August 5, 2003, David Allyn and Robert Thompson, on behalf of CPC, requested the inclusion

24. None of the Plaintiffs argue that they did not read the provisions.

25. *See* Robert Thompson's Affidavit, Doc. 54.

26. *See* Doc. 47, Ex. A, Allyn's resume.

27. *See* Robert Thompson's Affidavit, Doc. 54. The record does not include a resume pertaining to Susan Thompson, Robert Thompson's spouse.

28. *Id.*

29. CPC's mortgages included: (1) First Federal Savings Bank Mortgage executed on June 20, 2001; (2) Southtrust Bank Mortgage executed on June 13, 2001; (3) Southtrust Bank Mortgage executed on April 30, 2002; and (4) Florida First Choice Mortgage executed on July 1, 2002. *See* Doc. 47, Exs. C, D, E & F.

30. *See* Defendants' Counterclaim, Doc. 8, Ex. 5.

of additional terms to the conditional loan commitment letter.[31] Some of the terms negotiated by way of the letter were incorporated into a revised conditional loan commitment letter dated August 25, 2003.[32] In addition, Plaintiffs were represented by attorney Richard Langley, Esq., at the time they entered into the contract in September 2003.[33] In his affidavit, Plaintiffs' counsel avers that the final loan commitment was provided to him before closing on September 30, 2003.[34] He therefore had an opportunity to review the papers at the time of closing. In cases where a party is represented by counsel but the attorney chooses not to review the contract, courts have held that the "representation" factor is satisfied and upheld waiver of the right to a jury trial.[35]

Although Langley has stated that the final loan commitment did not contain a jury trial waiver and the parties did not negotiate or discuss the term prior to closing, based on the totality of the evidence, it cannot be fairly said that CPC "had no real choice but to sign" the closing documents which incorporated the jury trial waiver.[36] Although Allyn states in his affidavit that "the facts and circumstances surrounding the closing made thoughtful consideration of the new terms, including the jury trial waiver, impossible," [37] those same facts and circumstances prove that Allyn voluntarily signed the loan documents at issue on behalf of CPC with full knowledge of the waiver and with an appreciation of its import.[38]

**B.** *Fraud in the Inducement as to the Contract does not Invalidate the Waiver*

■ Plaintiffs argue that their claims of fraud with regard to the execution of the contract as a whole have the effect of invalidating the jury trial waiver provisions.[39] Plaintiffs contend that they were

**31.** *See* Doc. 47, Ex. H. CPC sought to add several terms, including but not limited to: "(1) The total amount should read $10,000,000 pending appraisal review; (2) There should be no pre-payment penalty ... (6)The first position lien will encumber only CPC fixtures and personal property used in conjunction with the real property; (7) Net sale proceeds equals the amount after sale minus all related owner/seller expenses including associated owner fees."

**32.** *See* Memorandum in Opposition to Dismiss, Doc. 13, Ex. 1.

**33.** *See* Doc. 47, Ex. G., Opinion Letter Drafted by Richard Langley, Esq.

**34.** *See* Doc. 56, Affidavit of Richard Langley, Esq.

**35.** *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F.Supp.2d 694, 708 (E.D.La.1999). *Citing Bonfield v. AAMCO Transmissions, Inc.*, 717 F.Supp. 589, 595–596 (N.D.Ill.1989).

**36.** *See* Doc. 57, Affidavit of David Allyn.

**37.** *Id.*

**38.** The Court is disinclined to conclude that CPC's assent resulted from duress. Indeed, Plaintiffs do not even make that charge in their pleadings. As the record shows, CPC could have walked away from the closing table to obtain financing from another source—as it subsequently did with Sandeep Bajaj in February 2004. In any event, waiver clauses have been held valid even in contracts containing "take it or leave it" terms. *See Seaboard Lumber Co. v. U.S.*, 903 F.2d 1560, 1564 (Fed.Cir.1990). *See Also Westside–Marrero*, 56 F.Supp.2d 694, 709 (E.D.La. 1999)("... [P]laintiffs clearly felt considerable pressure to obtain financing for the Laplace dealership. But they have produced no evidence that they could not have gone elsewhere for financing had they found CFC's terms oppressive.") *Citing Phoenix Leasing, Inc. v. Sure Broadcasting, Inc.*, 843 F.Supp. At 1385 (D.Nev.1994); *Bonfield v. AAMCO Transmissions, Inc.*, 717 F.Supp. 589, 596 (N.D.Ill.1989).

**39.** *See* Plaintiffs' Memorandum in Opposition to Motion to Strike, Doc. 24, at pp. 13–15.

not aware of critical facts, available only to Defendants, necessary to provide knowing and intelligent consent to *any* terms of the agreement. They maintain that Defendants' fraudulent actions "pervade through every aspect of [the parties'] relationship and contributed to the fraudulent agreements containing the jury trial waiver."[40] Accordingly, Plaintiffs argue that it would be illogical and unjust for the Court to enforce the waiver where all other provisions of the contract are invalid due to Defendants' fraudulent scheme.

█ The Court rejects Plaintiffs' argument and joins several other courts in deciding that fraud in the inducement going to the contract does not automatically vitiate the validity of a discrete jury trial waiver provision in the contract itself.[41]

Although Plaintiffs would like the Court to ignore *Telum, Inc. v. E.F. Hutton*,[42] where the Tenth Circuit found that fraud in the inducement as to a contract does not invalidate a jury trial waiver, the Court finds that *Telum* and its progeny provide appropriate guidance here. While it is true that the *Telum* Court analogized the waiver of a jury trial with a contractual provision providing for arbitration, its decision was not, as Plaintiffs argue, grounded in an interpretation of the Arbitration Act. Rather, the *Telum* Court's analysis appropriately focused on whether the waiver of the right to a jury trial was knowing and voluntary.[43] Furthermore, as noted in *Morris v. McFarland*,[44] "agreements to waive jury trials, as well as those fixing venue, making a choice of law, and the like would be practically unenforceable if they could be avoided simply by an allegation of fraud in the inducement." As Plaintiffs have failed to show that their assent to the jury trial waivers themselves was procured by fraud, the Court rejects Plaintiffs' arguments that the waivers are invalid.

### III. CONCLUSION

Based on the foregoing, Western Life Assurance Company and Old Standard Life Insurance Companies' Motion to Strike Plaintiffs' Jury Trial Demand (Doc. 5), and Motion to Strike Plaintiffs' Jury Trial Demand on Western United's Coun-

---

**40.** *Id.* at p. 14.

**41.** *Fleet National, supra,* note 14, at *9. ("Allegations of fraud going to the contract generally are insufficient to invalidate a jury waiver provision.") *Citing Telum, Inc. v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837–839 (10th Cir.1988) *cert. denied* 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). *Accord Ameritrust Company National Association v. Dew,* 1992 WL 84479 (S.D.N.Y.1992)(allegations of fraud in the inducement of the waiver of jury trial clause *may* suspend the application of a clause, but a general allegation of fraud in the inducement of the contract did not); *Russell–Stanley Holdings, Inc. v. Buonanno,* 327 F. Supp 2d 252, 257–258 (S.D.N.Y.2002)("Here, plaintiff does not allege in its complaint or elsewhere that it was fraudulently induced to waive its right to a jury trial. On the contrary, plaintiff is a sophisticated business entity that, in its assent to the Purchase Agreement, was represented by sophisticated counsel. For this reason we enforce the jury waiver and strike plaintiff's jury demand."); *Evans v. Union Bank of Switzerland* 2003 WL 21277125, fn. 1. (E.D.La.2003)("Plaintiffs also suggest, without any citation to authority, that the Court should decline to enforce the waivers because plaintiffs have asserted fraud with respect to aspects of the contracts wholly unrelated to the jury waiver provision. The Court has been unable to locate any authority that would support such a ruling. Moreover, the Court agrees with the case law holding to the contrary."); *Morris v. McFarland Clinic, P.C.,* 2004 WL 306110 (S.D.Iowa 2004).

**42.** 859 F.2d 835 (10th Cir.1988) *cert. denied* 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

**43.** *Id.* at 837–838.

**44.** 2004 WL 306110 at *2 (S.D.Iowa 2004).

terclaim (Doc. 19) are due to **GRANTED.** The demands for jury trial by Plaintiffs in the Amended Complaint and in response to Western United's Counterclaim are **STRICKEN.** Because this case will now be tried non-jury, the Clerk is directed to issue an Amended Case Management and Scheduling Order with the same dates but reflecting that the matter is set for a non-jury trial. Lastly, as the Court already has entered an Order granting in part Defendants' Motions to Dismiss, and as Plaintiffs have subsequently filed an Amended Complaint, Western United Life Assurance Company and Old Standard Life Insurance Companies' Motion to Strike Immaterial and Impertinent Matters from the original Complaint (Doc. 6) is due to be **DENIED** as **MOOT.**

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, this 10th day of December, 2004.