859 F.2d 835
 26 Fed. R. Evid. Serv. 1463
 TELUM, INC., a Nebraska Corporation, Earl K. Cook and Carl
R. King, Plaintiffs- Appellees and Cross-Appellants,
v.
E.F. HUTTON CREDIT CORPORATION, a corporation,
Defendant-Appellant and Cross- Appellee.
 Nos. 86-1375, 86-1496.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 14, 1988.
Rehearing Denied Nov. 25, 1988.
 
 Rex E. Madsen (Reed L. Martineau, Michael R. Carlston and Stephen J. Hill, with him on the brief), Snow, Christensen & Martineau, Salt Lake City, Utah, for plaintiffs-appellees.
 Francis M. Wikstrom (T. Patrick Casey, with him on the brief), Parsons, Behle & Latimer, Salt Lake City, Utah, for defendant-appellant.
 Before MOORE and BALDOCK, Circuit Judges, and BOHANON, District Judge*.
 BALDOCK, Circuit Judge.
 
 
 1
 This is an appeal from a final judgment in favor of plaintiff-appellee Telum, Inc. (Telum) and from an order denying the motion by defendant-appellant E.F. Hutton Credit Corp. (Hutton) for a new trial or a judgment notwithstanding the verdict. Telum brought an action to rescind both the lease of an oil drilling rig and the personal guaranties of Telum's owners, Carl King and Earl Cook, with Hutton on the grounds of fraud, breach of contract, failure of consideration, negligent misrepresentation, mutual mistake, unilateral mistake and constructive fraud. Telum also sought special damages on the fraud claim. Hutton counterclaimed to enforce the lease and guaranties.
 
 I.
 
 2
 The parties to this dispute entered an agreement whereby Hutton would purchase from J.P. Exploration, Inc., represented by Robert Pinder, an oil rig which would then be leased to Telum. Telum would then take the appropriate investment tax credit and sublease the rig back to J.P. Exploration. The parties signed the relevant agreements in July 1980, and Telum and J.P. Exploration began making their respective lease and sublease payments.
 
 
 3
 These payments continued for approximately two years until J.P. Exploration was sold to a third party who discontinued the sublease payments. Telum then sought to repossess the rig and, in the meantime, signed an extension agreement with Hutton which deferred Telum's monthly lease payments for a period of three months. Thereafter, in January 1983, Telum claims it discovered for the first time that the rig was not complete as described in a schedule attached to the lease at the time of the July 1980, closing. Thereupon, Telum sued to rescind the lease and recover restitution consisting of lease payments made and special damages for expenses incurred in retrieving the rig after the sale of J.P. Exploration.
 
 
 4
 At trial, Telum sought rescission, contending that Ray Welling, an employee of Hutton, made a number of misrepresentations which wrongfully induced Telum to enter the lease. Hutton counterclaimed to enforce the lease, arguing that Telum's reliance upon Welling was unreasonable. Hutton also claimed that Telum knew of the discrepancies between the lease equipment schedule and the actual rig at the time the extension agreement was signed, thereby waiving any claim for fraudulent inducement. Hutton further asserted that the facts showed the existence of a joint venture between Telum and Pinder. According to Hutton, if there were a joint venture, Pinder's knowledge that the rig was incomplete could be attributed to Telum.
 
 
 5
 The issues were tried before a jury which answered special interrogatories, finding that (1) Hutton had not proved by a preponderance of the evidence that Telum, Cook and King, at the time that Telum signed the extension agreement, knew about the fraud, and that (2) Telum, Cook and King proved with clear and convincing evidence that they were induced by Hutton's misrepresentations of material fact to enter the lease agreement. Based upon the jury verdict, the trial court entered judgment rescinding the lease and the personal guaranties and dismissed Hutton's counterclaim. The court also denied Hutton's motion for a new trial or judgment notwithstanding the verdict.
 
 
 6
 Hutton appeals on four grounds. First, it claims that Telum did not prove by clear and convincing evidence that its reliance on Hutton was justifiable and reasonable. Second, Hutton maintains that the undisputed evidence at trial was that Telum expressly waived its claim for fraudulent inducement by signing the extension agreement with knowledge that the rig was incomplete. Third, Hutton alleges that the district court erred by not allowing the jury to determine whether Telum and Pinder had formed a joint venture. Finally, Hutton argues that the trial court erred in failing to enforce a jury waiver provision of the contract.
 
 
 7
 On cross-appeal, Telum urges that the trial court erred by denying its request for special damages. Second, Telum alleges error in the court's failure to present its alternative theories to the jury, including negligent misrepresentation, failure of consideration, mutual mistake and unilateral mistake. Finally, Telum claims that the trial court wrongly excluded evidence purporting to show that Welling had embezzled $40,000 from Hutton in connection with the Telum lease. Because of its dispositive effect, we will deal first with the jury-waiver issue. We reverse and remand.
 
 II.
 
 8
 After Hutton counterclaimed, Telum demanded a jury trial. Hutton opposed this demand, relying on p 16(b) of the master lease agreement between the parties which provided in part that the "[l]essee waives all right to trial by jury in any litigation arising herefrom or in relation hereto." Exhibit 1. The trial court granted Telum's request for a jury trial, rec. vol. IV at 26, and denied Hutton's motion to reconsider that ruling, rec. vol. XII at 9. In answers to special interrogatories, the jury found that Telum, without knowledge of the relevant facts, was induced to enter the lease agreement as a result of Hutton's material misrepresentations. Upon the jury's finding of fact, the trial court entered judgment in favor of Telum, dismissing Hutton's counterclaim, ordering rescission of the lease agreement and awarding Telum restitution with interest and costs.
 
 
 9
 On appeal, Hutton argues that the trial court erred in failing to enforce the jury waiver provision of the contract without proof that the waiver provision was itself fraudulently induced. We agree.
 
 
 10
 The right to a jury trial in the federal courts is governed by federal law. Simler v. Conner, 372 U.S. 221, 221-22, 83 S.Ct. 609, 609-10, 9 L.Ed.2d 691 (1963) (per curiam) (jury trial right controlled by federal law to insure uniformity in exercise required by seventh amendment). Agreements waiving the right to trial by jury are neither illegal nor contrary to public policy. McCarthy v. Wynne, 126 F.2d 620, 623 (10th Cir.), cert. denied, 317 U.S. 640, 63 S.Ct. 31, 87 L.Ed. 515 (1942); see Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832 (4th Cir.1986) (right to jury trial, although fundamental, may be knowingly and intentionally waived by contract); K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 755 (6th Cir.1985) (considering it "clear that the parties to a contract may by prior written agreement waive the right to jury trial").
 
 
 11
 Appellees acknowledge the possibility of waiver but rely on several cases where courts have refused to uphold contractual jury waiver provisions. See National Equip. Rental v. Hendrix, 565 F.2d 255 (2d Cir.1977); Dreiling v. Peugeot Motors of America, 539 F.Supp. 402 (D.Colo.1982). These decisions relied on facts such as inconspicuous fine print or a gross disparity in bargaining power to invalidate jury waiver provisions. Telum and Hutton, on the other hand, were both sophisticated parties, and the provision here was in the normal print size of the contract. Moreover, the trial judge did not invalidate the waiver based on such findings, but rather seemed to conclude that Telum's allegations of fraud in the inducement relating to the contract as a whole were sufficient to vitiate the provision. Rec. vol. IV at 16-17; id. vol. XII at 8-9.
 
 
 12
 The parties have not cited any federal cases dealing specifically with this issue, and we have found none. Appellants urge us to accept by analogy the federal cases dealing with the effect of fraud in the inducement upon the enforceability of contract arbitration clauses. Both the United States Supreme Court and this court have held that allegations of fraud in the inducement relating specifically to an arbitration provision may suspend application of such a provision. Allegations of fraud in the inducement going to the contract generally, however, have been held not to affect the agreement to arbitrate.[1] See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967); Meyer v. Dans un Jardin, S.A., 816 F.2d 533, 538 (10th Cir.1987). This analogy is especially appropriate here because submission of a case to arbitration involves a greater compromise of procedural protections than does the waiver of the right to trial by jury. See Hart v. Orion Ins. Co., 453 F.2d 1358, 1361 (10th Cir.1971) ("[a]rbitration differs radically from litigation, and one who chooses it must be content with its informalities and looser approximations").[2] For these reasons, we hold that the trial judge erred in ruling that general allegations of fraud are sufficient to invalidate a jury waiver provision. Appellees were not entitled to a jury trial as a matter of law. Accordingly, we vacate the judgment entered by the trial court and remand for a new trial without a jury.
 
 III.
 
 13
 We now address evidentiary issues raised on appeal and cross-appeal. First, Hutton argues that the trial judge erred by failing to admit a financial statement for the purpose of showing the existence of a joint venture between Telum and Pinder.
 
 
 14
 Hutton offered a financial statement containing an account receivable referring to the "Telum joint venture." Rec. vol. IX at 895-96. Pinder testified that the receivable reflected an amount owed to J.P. Exploration Co. by himself or a related company for construction of the rig. Id. at 896. Counsel for Telum objected on the grounds of materiality, asserting that the statement showed a debt owed only by Pinder and not by Telum. The trial judge sustained the objection. Id.
 
 
 15
 Materiality of an item of evidence refers to whether or not that evidence relates to a fact of consequence to the determination of an action. 1 J. Weinstein and M. Berger, Weinstein's Evidence Sec. 401 (1986). Although the objection was made and sustained on the basis of materiality, the concept of materiality is now embodied within the broader notion of relevance as defined in the federal rules: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401 (emphasis added). A trial court has broad discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent a showing of clear abuse of that discretion. Hill v. Bache Halsey Stuart Shields Inc., 790 F.2d 817, 825 (10th Cir.1986).
 
 
 16
 Substantive law, in this case Utah law, determines which facts are of consequence in a given action. 1 J. Weinstein and M. Berger, Weinstein's Evidence Sec. 401 (1986). Under Utah law, the knowledge of a joint venturer with regard to the subject of the venture is imputed to the other joint venturers. Utah Code Ann. Sec. 48-1-9 (1981) (knowledge of partner charged to partnership); Hammer v. Gibbons & Reed Co., 29 Utah 2d 415, 510 P.2d 1104, 1105 (1973) (joint ventures bear partnership relation to each other). If, as joint venturers, Pinder's knowledge that the rig was not complete at the time of closing could be attributed to Telum, then the joint venture issue would clearly relate to whether Telum in fact relied upon Welling's misrepresentations. As the evidence in question referred specifically to the alleged joint venture, we hold that the trial court abused its discretion in refusing to admit the financial statement.
 
 IV.
 
 17
 On cross-appeal, Telum argues that the trial court erred in refusing to permit Telum to introduce evidence showing that Welling, as Hutton's agent, embezzled $40,000 in connection with the Telum lease. Upon Hutton's objection, the trial judge excluded the evidence as both irrelevant and inflammatory. Rec. vol. X at 1075.
 
 
 18
 Telum argues that the proffered testimony was relevant 1) to impeach Welling, 2) to show Welling's intent and motive in making misrepresentations to Telum and 3) to show that Telum should not be responsible for the $40,000 which was included as part of the equipment cost owed on the lease to Hutton.
 
 
 19
 The trial court's decision to exclude evidence as irrelevant is within its sound discretion and will not be reversed absent an abuse of discretion. Hill, 790 F.2d at 825. First, Telum fails to show why Welling's purported embezzlement from Hutton would affect the amount that Telum owes Hutton under the lease, assuming the lease were held valid. Further, during pretrial discussions, counsel for Telum acknowledged that there was no dispute as to what payments were agreed to under the lease and which of those payments were made. Rec. vol. V at 31. Thus, the trial judge did not abuse his discretion by considering the alleged embezzlement irrelevant when offered to mitigate Telum's obligation to Hutton.
 
 
 20
 Evidence of the alleged embezzlement had some relevance to Welling's motive in making the misrepresentations charged by Telum, and for impeachment.[3] Even if relevant, however, the trial judge may properly exclude evidence "if its probative value is substantially outweighed by the danger of prejudice." Fed.R.Evid. 403; Weir v. Federal Ins. Co., 811 F.2d 1387, 1395 (10th Cir.1987). A determination to exclude evidence under this rule is similarly within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. Id. at 1396.
 
 
 21
 In making the Rule 403 determination, the district judge must balance the relevance of the evidence with its potentially prejudicial effect. Id. Further, this balancing task "is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited." Rigby v. Beech Aircraft Co., 548 F.2d 288, 293 (10th Cir.1977). We cannot say that the trial judge abused his discretion. In light of the inflammatory nature of the evidence regarding the alleged embezzlement, it was within the discretion of the trial judge to exclude that evidence, and we sustain his ruling.
 
 V.
 
 22
 On cross-appeal, Telum argues that the trial court erred by denying Telum's request for special damages or reimbursement. As part of its restitution claim, Telum sought reimbursement for money expended in trying to repossess the rig and collect insurance proceeds after the sale to a third party of J.P. Exploration. Following a post-trial hearing on the matter, the trial court denied Telum's motion for reimbursement. Rec. vol. I at 123-24. Because the order of the trial court contains no findings of fact or conclusions of law, we decline to review it on appeal. Instead, we vacate the order denying reimbursement and remand the issue for consideration upon retrial.
 
 VI.
 
 23
 The district court judgment based on the jury verdict and the order denying reimbursement are VACATED, and the case is REMANDED to the district court for a new trial consistent with this opinion.
 
 
 
 *
 The Honorable Luther L. Bohanon, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 Although this result was based on language found in Sec. 4 of the United States Arbitration Act of 1925, the Court noted that "the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Co. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967). Thus, according to the Court, to make enforceability of arbitration clauses consistent with other contracts, arbitration could be suspended if fraud were specifically alleged to have induced the making of the arbitration agreement. Id
 
 
 [2]
 This reasoning is not inconsistent with the strong federal policy favoring arbitration. See Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); Peterson v. Shearson/American Express, 849 F.2d 464, 465-66 (10th Cir.1988) ("[w]hen a contract mandates arbitration, courts generally will enforce the arbitration clause absent a waiver"). Given that arbitration involves less procedural protection than a full judicial proceeding, the policy favoring enforcement of contract arbitration clauses strengthens our analogy
 
 
 [3]
 Hutton argues that the application of Rule 608(b), regarding the admissibility of specific instances of conduct other than convictions for attacking credibility, would preclude the use of this evidence to impeach Welling. Appellant's Reply Brief at 27-28. However, the terms of Rule 608(b) would not preclude any testimony on the subject but instead would forbid the resort to the use of extrinsic evidence. Fed.R.Evid. 608(b)