# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2023

Lyle W. Cayce
Clerk

No. 22-40555

_____

Pizza Hut L.L.C., *as successor-in-interest to* Pizza Hut, Incorporated,

*Plaintiff—Appellee*,

*versus*

Jignesh N. Pandya; Ronak Foods, L.L.C.; Pandya Restaurants L.L.C.; JNP Foods, L.L.C.; 8 New Britain Pizza L.L.C.,

*Defendants—Appellants*,

Ronak Capital, L.L.C.,

*Intervenor—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:21-CV-89

_____

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

Jignesh Pandya was one of Pizza Hut L.L.C.'s largest franchisees in Pennsylvania, operating 43 restaurants there (plus one in Connecticut). Ultimately, though, Pandya failed to fulfill his contractual obligations, so

No. 22-40555

Pizza Hut terminated the parties' various franchise agreements. Hoping to keep the restaurants open, Pizza Hut entered into two post-termination agreements with Pandya for him to continue operating the restaurants while the parties tried to find a buyer. The first agreement was unsuccessful. The second ended in this litigation. After several rounds of pleading, Pandya demanded a jury trial. Pizza Hut moved to strike the request under the second post-termination agreement's bilateral jury waiver. The district court enforced the waiver, and the case continued to a bench trial in which Pizza Hut prevailed.

The only issue on appeal is whether the district court erred in striking Pandya's jury demand. Pandya contends that the jury waiver was procured by fraud and that the district court failed to give due weight to the Seventh Amendment's inviolability. In his view, the history of the Seventh Amendment shows that pre-dispute jury waivers were non-existent, and, even if they did exist, fraud can always invalidate a contract.

The Seventh Amendment right to a jury trial is unassailable but not unwaivable. Courts have long honored parties' agreements to waive the jury right if the waiver is knowing and voluntary. We follow our sister circuits in holding that general allegations of fraud do not render contractual jury waivers unknowing and involuntary unless those claims are directed at the waiver provision specifically. Because Pandya failed to show that the jury waiver was unknowing and involuntary, we hold him to his bargain and AFFIRM.

I

Between 2010 and 2012, Pandya, through his various L.L.C.s—Ronak Foods, Pandya Restaurants, and JNP Foods—entered into multiple 20-year franchise agreements with Pizza Hut to operate a total of 43 restaurants in Pennsylvania and one restaurant in Connecticut. In Pandya's view, he did his

best to run the franchises in an increasingly competitive market, and Pizza Hut's outdated business model is to blame for any failures. According to Pizza Hut, however, Pandya failed to pay certain franchise fees and violated brand and operational standards. In any event, Pandya's default was grounds for termination under the Franchise Agreements, and, effective October 15, 2018, Pizza Hut terminated the agreements.

To salvage the restaurants, the parties entered into a Forbearance Agreement, allowing Pandya to continue operating the franchises while Pandya tried to find a buyer. Pandya's search for a buyer proved unsuccessful, and the parties negotiated a second post-termination agreement, the Transfer Agreement. They discussed the agreement's terms for weeks, ultimately settling on an agreement in which Pandya would continue running certain restaurants in compliance with the Franchise Agreements. Pandya also agreed to cooperate with Pizza Hut in transferring the restaurants to an approved buyer free and clear and to maintain workers' compensation insurance. In turn, Pizza Hut "agree[d] to use commercially reasonable efforts to identify a Purchaser." If Pandya complied "with all of the terms and conditions of" the Transfer Agreement and a purchaser paid $2 million or more, then Pandya's capital group, Ronak Capital, L.L.C., would receive the first $2 million from the sale and Pandya would be released from certain outstanding franchisee fees. If a buyer was not found by the end of the term of the agreement, then the remaining stores would be closed and Pandya would still be on the hook for his outstanding payments to Pizza Hut.

The last paragraph of the Transfer Agreement provides in full (emphasis added):

> 13. <u>Miscellaneous</u>: This agreement will be binding on the parties hereto. This Agreement and all disputes arising or related to this Agreement will be governed by, and will be construed in accordance with, the internal laws of the state of

Texas (without giving effect to Texas choice of law rules). The parties hereto hereby consent and waive any objections they might otherwise have to the jurisdiction and venue of any state or federal court of general jurisdiction in Collin County, Texas, or any other county or district in which [Pizza Hut] then has its principal place of business, with respect to any proceedings arising out of this Agreement or the relationship between the parties. **The parties to this Agreement explicitly waive their respective rights to a jury trial in any litigation between or among them and hereby stipulate that any such trial shall occur without a jury.** The parties hereto irrevocably waive, to the fullest extent permitted by law, any right to or claim for any punitive, exemplary, incidental, indirect, special, consequential or other similar damages in any action or proceeding whatsoever between such parties and/or any of their affiliates and covenant never to advance or pursue any such claim for punitive damages. The parties hereto agree that mailing of any process to a party's address set forth on the signature pages to this Agreement, by registered or certified mail or reputable private delivery service, will constitute lawful and valid process.

Embedded in this paragraph is an agreement by the parties to "explicitly waive their respective rights to a jury trial in any litigation between or among them and hereby stipulate that any such trial shall occur without a jury."

Once again, the parties were dissatisfied with each other's performance. Pizza Hut terminated the agreement and filed suit against Pandya and his entities, alleging various breach of contract and intellectual property claims. Pandya counterclaimed, alleging that Pizza Hut breached the Transfer Agreement.[1] Both parties amended their claims. In his third and

---

[1] Ronak Capital intervened and filed a complaint against Pizza Hut for breaching the Transfer Agreement.

final amended counterclaims, Pandya alleged new tort counterclaims for: (1) fraud/fraudulent inducement; (2) breach of fiduciary duty; (3) tortious interference with prospective business relations; (4) tortious interference with existing contracts and business relations; and (5) business disparagement and defamation. Pandya also demanded a jury trial.

Pizza Hut moved to strike Pandya's jury demand based on the waiver in the Transfer Agreement and to dismiss the Third Amended Counterclaims. In response, Pandya argued that the Transfer Agreement's waiver does not apply to disputes arising under the other agreements, the jury demand was proper under Federal Rules of Civil Procedure 38 and 39, and the jury waiver provision was invalid. In making this last point, at the hearing, Pandya argued that the Transfer Agreement and its provisions were procured by fraud.

The district court held a combined hearing on the motion to strike and the motion to dismiss. The court ultimately granted the motion to strike. The court held that the parties explicitly waived their rights to a jury trial under the Transfer Agreement's plain language and that the waiver was knowing and voluntary. In determining knowledge and voluntariness, the court concluded that: (1) the parties had relatively equal bargaining power; (2) Pandya is an experienced businessman; (3) Pandya had an opportunity to negotiate the Transfer Agreement's terms; and (4) the jury waiver was conspicuously placed in the short contract. The court addressed Pandya's fraud claim in a footnote, following other courts in holding that the fraud allegations lobbed against the whole contract and not the waiver provision specifically cannot void the waiver agreement. Having found the waiver valid, the district court did not reach the parties' arguments on whether the jury request was proper under the Federal Rules of Civil Procedure.

No. 22-40555

The district court further granted in part Pizza Hut's motion to dismiss. It dismissed with prejudice Pandya's breach of fiduciary duty and business disparity counterclaims and dismissed without prejudice the tortious interference with existing business relations counterclaim. The court allowed the other counterclaims—fraud/fraudulent inducement, tortious interference with prospective business relations, and defamation—to go forward.

After a round of summary judgment motions, which the district court denied at the pretrial conference, the case proceeded to a five-day bench trial. The district court ruled for Pizza Hut and awarded $6,688,751.14 in damages and interest. Pandya timely filed this appeal.

## II

Pandya argues that the district court erred in striking his jury demand.[2] The Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."[3] This right "occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."[4] Still, the Supreme Court

---

[2] Generally, whether a party is entitled to a jury trial is a legal question we review de novo. *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 416 (5th Cir. 2014); *Apache Corp. v. Global Santa Fe Drilling Co.*, 435 F. App'x 322, 324 (5th Cir. 2011) (per curiam). We have not explicitly adopted this standard in reviewing the granting of a motion to strike under a prospective contractual waiver. But because whether a party can contractually waive the jury right involves the same legal question, we review that inquiry de novo.

[3] U.S. Const. amend. VII.

[4] *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

No. 22-40555

has long recognized that parties can waive their jury right.[5] We, too, have explained that a party can "expressly or impliedly waive[] their right to a jury trial."[6] An express waiver "requires only that the party waiving such right do so 'voluntarily' and 'knowingly' based on the facts of the case."[7]

But which party has the burden to establish or negate that a prospective contractual waiver was knowing and voluntary? Our sister circuits are split on the issue. The Second[8] and Fourth[9] Circuits have placed the burden on the party seeking to enforce the contractual jury waiver to show that the waiver was knowing and voluntary. By contrast, the Sixth Circuit has placed the burden on the party resisting the waiver.[10] We have not firmly planted our flag on the issue. But we find the Sixth Circuit's reasoning persuasive.

As the Sixth Circuit noted, facially valid contractual waivers, like other valid contractual provisions, are assumed enforceable unless the party

---

[5] *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848–49 (1986) (listing the civil jury trial right among the waivable rights); *see also Johnson v. Zerbst*, 304 U.S. 458 (1938).

[6] *Bowles v. Bennett*, 629 F.2d 1092, 1095 (5th Cir. 1980).

[7] *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed. Cir. 1990) (quoting *Brookhart v. Janis*, 384 U.S. 1, 4, 5 (1966)). Federal courts "overwhelmingly appl[y]" the knowing and voluntary standard in considering a contractual jury waiver's validity. *K.M.C. Co., Inc. v. Irving Tr., Co.*, 757 F.2d 752, 758 (6th Cir. 1985) (collecting cases).

[8] *See, e.g.*, *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977).

[9] *See, e.g.*, *Leasing Serv. Corp, v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986).

[10] *See Irving Tr., Co.*, 757 F.2d at 758 (citing 5 MOORE'S FEDERAL PRACTICE ¶ 38.46, at 38–40 (2d ed. 1984)).

seeking to avoid the waiver proves otherwise.[11] To be sure, this general rule assumes that the party invoking the waiver has shown that a facially valid contract exists between the parties.[12] But once a party establishes that a contractual waiver exists, the burden shifts to the party objecting to enforcement of a waiver to explain why the contractual waiver is invalid.

That a contractual jury waiver involves a constitutional right does not change the analysis. After all, the Seventh Amendment jury right is not compulsory; a party must affirmatively request a jury trial. Consider how the jury right operates without a waiver: A party must demand it in accordance with the federal rules. If a party fails to do so, even accidentally, then the party forfeits the right to have his case heard by a jury.[13] And if the opposite party challenges the right's applicability, the party requesting the right bears the burden of showing it is entitled to a jury. Thus, we follow the Sixth Circuit in holding that the party objecting to the enforcement of a waiver in a facially valid contract bears the burden of showing the waiver's unenforceability.

### III

Having determined who bears the burden, we turn to whether Pandya has met his. Paragraph 13 of the Transfer Agreement provides: "The parties to this Agreement explicitly waive their respective rights to a jury trial in any

---

[11] *See id.* ("In determining whether to give effect to the contractual waiver against an objecting party the court should start with a presumption in favor of validity in the interest of liberty of contract. This would require the objecting party to point to some one or more matters that render the provision improper.").

[12] *Cf. Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) (declining to address the circuit split on which party bears the burden because the party seeking to strike the demand "did not meet their initial burden of showing that petitioner was personally bound by the jury waiver provision").

[13] *See* Fed. R. Civ. P. 38(d); *see also Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1063 (5th Cir. 1990).

No. 22-40555

litigation between or among them and hereby stipulate that any such trial shall occur without a jury." Pandya challenges the provision's enforceability and scope. On enforceability, Pandya argues that (1) Pizza Hut fraudulently procured the Transfer Agreement, and (2) the factors that courts commonly consider in determining whether a waiver is knowing and voluntary weigh against enforcing the waiver. Pandya argues on the second point that the district court erred in considering irrelevant factors in granting the motion to strike. On the scope of the waiver, Pandya argues in a footnote that the waiver does not include claims brought under the Franchise or Forbearance Agreements. We address these issues in turn, starting with the fraud claim.

A

Pandya first argues that under the "constitutional framework" from *New York State Rifle & Pistol Association, Inc. v. Bruen*,[14] we must assess constitutional rights in accordance with their historical context. According to Pandya, that historical record shows that at common law, pre-dispute jury waivers were nearly non-existent and, if they did exist, were unenforceable if fraudulently induced. From this, Pandya seemingly argues that we should reject the jury waiver provision outright. We are unpersuaded.

For one, *Bruen* was not a Seventh Amendment case. Even considering *Bruen*'s instructions relevant to our inquiry, the Supreme Court has been careful to instruct lower courts not to read new pronouncements as overruling any related precedent.[15] The Supreme Court has never

---

[14] *See* 142 S. Ct. 2111, 2130–31 (2022).

[15] *Cf. Rodriguez de Quijas v. Shearson/Am. Express Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.");

No. 22-40555

backtracked on the jury right's waivability. So entrenched is this principle that "[i]t is elementary" that the Seventh Amendment jury right can "be relinquished knowingly and intentionally."[16] Courts have long blessed pre-dispute jury waivers if they are knowing and voluntary.[17] Pandya offers no binding authority to contradict this.[18] Accordingly, he has not shown that *Bruen* should alter our analysis.

Pandya next argues that the waiver was unknowing and involuntary because: (1) Pizza Hut allegedly procured the entire Transfer Agreement by fraud, and (2) no factor that the district court considered shows the agreement was knowing and voluntary. On this second point, Pandya argues

---

*Agostini v. Felton*, 521 U.S. 203, 237 (1997) (lower courts may not "conclude [that] recent cases have, by implication, overruled an earlier precedent").

[16] *Hendrix*, 565 F.2d at 258 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

[17] *See id.*; *K.M.C., Co., Inc.*, 757 F.2d at 755 ("It is clear that the parties to a contract may by prior written agreement waive the right to jury trial."); *Crane,* 804 F.2d at 833.

[18] To make his case against pre-dispute contractual waivers, Pandya points to states which have barred recognition of such waivers. But the Supreme Court has held, "[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Connor*, 372 U.S. 221, 222 (1963) (per curiam); *see also Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law."). The federal circuits courts have overwhelmingly addressed the enforceability of jury waivers under federal law. *See, e.g.*, *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420–21 (6th Cir. 2011); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007); *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 18 (1st Cir. 2002); *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988);*Crane*, 804 F.2d at 832–33.

Even if we were to look to state law, the parties agreed that Texas law governs their dispute. Like federal law, pre-dispute jury waivers are enforceable under Texas law if they are knowing and voluntary. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 132 (Tex. 2004).

No. 22-40555

that the district court erred in considering irrelevant factors in granting the motion to strike.

1

Neither the Supreme Court nor we have addressed whether a fraud claim must target the waiver provision specifically to invalidate the waiver. But the Second and Tenth Circuits have. Both concluded that a fraud claim must be alleged against the jury waiver specifically. Faced with the issue first, the Tenth Circuit analogized to the arbitration context.[19] The court reasoned that, like standalone jury waiver agreements, contractual agreements to arbitrate also require parties to bypass their jury rights.[20] Looking to the Supreme Court's instruction on fraud claims in the arbitration context, the Tenth Circuit applied the rule that only "fraud in the inducement relating specifically to an arbitration provision may suspend application of such a provision."[21] The Tenth Circuit applied the rule to the jury waiver context, holding that a district court cannot vitiate the jury waiver provision for general fraud allegations.[22] The Second Circuit followed this analysis in *Merrill Lynch & Co. v. Allegheny Energy, Inc.*[23]

The district courts within our circuit have followed the Second and Tenth Circuits.[24] Pandya asks us to split from our sister circuits and impliedly

_____

[19] *Telum*, 859 F.2d at 837.

[20] *Id.* at 838.

[21] *Id.* at 837–38 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)).

[22] *Id.*

[23] 500 F.3d at 188.

[24] *See, e.g.*, *BMC Software, Inc. v. Int'l Bus. Machines Corp.*, 2019 WL 324626, at *5 (S.D. Tex. Jan. 25, 2019); *Williams v. Aire Serv, LLC*, 2019 WL 13150025, at *2 (W.D. Tex.

overrule these district courts. He contends that both circuits erred in comparing jury waivers to arbitration clauses because, unlike arbitration, courts must construe every reasonable presumption against waiver of the jury right. The Second Circuit explicitly considered the presumption against jury waivers in deciding to follow the Tenth Circuit and hold that fraud allegations must be against the waiver provision specifically.[25] We find the Second Circuit's reasoning persuasive. If parties can waive their right to a jury—indeed, *a whole trial*—through an arbitration clause, then a contractual jury waiver, which only waives a specific *type* of trial, should receive the same treatment.[26] We agree with the Second and Tenth Circuits.

Applying the arbitration rule, we hold that Pandya failed to allege that the jury waiver specifically was procured by fraud. Pandya alleged in his Third Amended Counterclaims that Pizza Hut fraudulently induced him into signing the Transfer Agreement by representing that it would help him find a buyer although it never intended to do so. Instead, Pizza Hut allegedly made this promise to get Pandya to release any potential claims before it sued. These allegations target the agreement as whole, not just the waiver provision, and thus cannot void the waiver provision.

Pandya argues that Pizza Hut added the jury waiver at the last minute, after obtaining litigation counsel, to gain a litigation advantage. But Pandya

---

June 12, 2019); *Evans v. Union Bank of Switzerland*, 2003 WL 21277125, at *2 n.1 (E.D. La. May 30, 2003).

[25] *Merrill Lynch & Co. Inc.*, 500 F.3d at 188.

[26] *See Orr*, 294 F.3d at 711 ("[B]y agreeing to arbitration, Appellants have necessarily waived the following: (1) their right to a judicial forum; and (2) their corresponding right to a jury trial."); *cf. IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 993 (7th Cir. 2008) ("Agreement to a bench trial cannot logically be treated less favorably than agreement to confess judgment, or arbitrate, or litigate in a forum that will not use a jury.").

No. 22-40555

did not allege any of this in his Third Amended Counterclaims. There, he alleged only that Pizza Hut fraudulently induced him into signing the Transfer Agreement as a whole. This is insufficient to render the jury waiver provision void. Accordingly, the district court correctly held that Pandya's fraud claim does not invalidate the jury waiver.[27]

2

Courts, including the district court below, generally consider four factors in determining whether a pre-dispute jury waiver is knowing or voluntary:[28] "(1) whether both parties had an opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining power of the parties, and (4) the business acumen or professional experience of the party opposing the waiver."[29] Some courts within our circuit also consider whether the party was represented by counsel.[30] We agree that the above are helpful, though

---

[27] Pandya argues for the first time in reply that the district court should have bifurcated the fraud question and had a trial on that issue before ruling on the motion to strike. Because we adopt the Tenth Circuit's approach that fraud must be alleged at the waiver provision specifically and Pandya has failed to do so, we do not address this argument.

[28] *See Crane*, 804 F.3d at 833. Pandya argues this test is insufficient because it does not adequately consider instances of fraud. But he does not suggest what test should replace it. In any event, as explained above, general fraud allegations do not void a jury waiver. He also argues that the district court should have considered whether he met the demand in Federal Rules of Civil Procedure 38 and 39. But those rules do not address *pre-dispute* waivers. Further, whether Pandya timely demanded a jury is relevant only if he did not waive his right to a jury in the first place.

[29] *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 619–20 (N.D. Tex. 2018).

[30] *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*, 2012 WL 201533, at *3 (S.D. Tex. Jan. 23, 2012); *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 707 (E.D. La. 1999) (citation omitted).

not exhaustive, factors in determining whether, under the totality of the circumstances, a contractual jury waiver is knowing and voluntary. Each factor supports upholding the Transfer Agreement's jury waiver.[31]

*First*, Pandya argues that he had no chance to negotiate because the jury waiver was added at the end of negotiations. The record supports the district court's determination that Pandya negotiated the Transfer Agreement's terms. Generally, the fact that a jury waiver is bilateral "suggests the parties had a meaningful opportunity to negotiate."[32] Also, Pizza Hut responded to Pandya's requests throughout the negotiation process. Although Pizza Hut inserted the jury waiver at the end, Pandya questioned certain terms in the paragraph containing the waiver on the last turn before signing. His active participation in negotiations over the contract, including over the paragraph containing the waiver, distinguishes this case from the cases that Pandya relies on.[33] Thus, Pandya has failed to show that this factor weighs against enforcing the waiver.

*Second*, Pandya argues that the jury waiver is inconspicuously placed because it was not bolded, highlighted, or otherwise set apart. A waiver provision does not have to be set apart to be conspicuous. The Transfer

---

[31] We have not decided what standard we apply in assessing whether a waiver is knowing and voluntary. The Fourth Circuit seemingly views this as a fact question and applies a "clearly erroneous on the evidence" standard. *See Crane*, 804 F.2d at 833. We do not decide which standard to follow here because Pandya's argument fails whether we view this as a legal question or a factual question we view anew, *cf. K.M.C., Co., Inc.*, 757 F.2d at 758 (noting the mixed question of law and fact "subject to . . . independent review" in addressing a contractual waiver), or under a clearly erroneous standard.

[32] *Miramontes v. Peraton Inc.*, 2022 WL 17364263, at *3 (N.D. Tex. Dec. 1, 2022).

[33] For example, in *Servicios Comerciales Lamosa*, changes were still being made to the document up to the moment the non-movant arrived to sign the agreement. So there was little time for the non-movant to review the changes before signing. *See* 328 F. Supp. 3d at 621.

Agreement is short for a legal document (nine pages). The jury waiver is in the final paragraph before the signatures.[34] Pandya circled the paragraph containing the waiver,[35] so he was aware of it.[36] In other words, Pizza Hut did not place the waiver in the middle of a paragraph of inconsequential terms that are easily skippable. The district court thus rightly concluded that Pandya failed to show that this factor weighed in his favor.

*Third*, Pandya argues that Pizza Hut was the larger party and the one who terminated the franchise agreements, and so it had more bargaining power. But Pandya, too, had significant bargaining power. Pandya admits that he was "the largest owner of Pizza Huts in Pennsylvania." Pizza Hut thus had a strong interest in keeping his restaurants open. Pandya also successfully negotiated several favorable terms in the contract. So while there was "some inequality of bargaining power," Pandya did not have "the kind of 'extreme bargaining disadvantage' or 'gross disparity in bargaining position' that occurs only in certain exceptional situations."[37]

---

[34] *See Crane*, 804 F.2d at 833 (considering the length of the agreement); *Zavala v. Aaron's Inc.*, 2015 WL 5604766, at *2 (E.D. Tex. Sep. 23, 2015) ("Courts determine the conspicuousness of jury waiver clauses on a case-by-case basis, and consider factors such as the typeface, the length of the document, and the location of the waiver clause.").

[35] When viewed with track changes, the sentence containing the waiver was also underlined.

[36] *See Crane*, 804 F.3d at 833 (upholding jury waiver when the defendants marked up other sections of the agreement).

[37] *Westside–Marrero Jeep Eagle, Inc.*, 56 F. Supp. 2d at 709; *see also, e.g.*, *Jeffrey J. Glaser, MSD v. Compass Bank, N.A.*, 2010 WL 11553124, at *3 (E.D. Tex. July 14, 2010) (noting that gross disparity only "exists only when the party with less bargaining power is completely unable to reject the terms of an agreement, even if those terms are utterly unacceptable"); *Classic Home Fin., Inc.*, 2012 WL 201533, at *3 ("That Plaintiff has more assets, offices of operation, employees, and consumers does not amount to a gross disparity in bargaining power, particularly in light of Defendant's business sophistication.").

On this factor, Pandya further argues that Pizza Hut pressured him into signing the agreement by threatening to close the stores immediately. In support he again points to *Servicios*. There, the defendant had to sign the unilateral jury waiver or else risk stalling his business operations.[38] No such bargaining chip is present here. The parties were already discussing closing certain stores as the Franchise Agreements had been terminated. We thus do not find *Servicios* persuasive.

*Fourth*, Pandya argues that Pizza Hut presented no supporting evidence that he had sufficient business acumen. But Pandya undercuts this argument with his own words. Pandya stated in his complaint that he is a "well-known and successful businessman with multiple companies" and "decades of experience in the franchise industry." He even highlighted that he had won an award for his business acumen.[39] His annotations on the version of the draft containing the jury waiver back up his words. In these annotations, he questioned some provisions, further showing that he was able to "comprehend[] the import of the language contained in the waiver clause," which was clear.[40] Pandya argues that business acumen cannot overcome fraud. But, as discussed above, he does not claim that the *waiver* was procured by fraud, which is the proper inquiry in determining whether a waiver is knowing and voluntary.

---

[38] *Servicios*, 328 F. Supp. 3d at 621.

[39] *See also, e.g.*, *Williams*, 2019 WL 13150025, at *4 (considering that plaintiff had run several businesses for a decade in assessing business acumen).

[40] *Westside–Marrero Jeep Eagle, Inc.*, 56 F. Supp. 2d at 707; *see also, e.g.*, *Crane*, 804 F.2d at 833 ("[T]he Cranes' insistence on the execution of the handwritten agreement which limited the lessor's remedies in the event of a default indicates their understanding of the situation and of their interests.").

No. 22-40555

Finally, Pandya argues that the district court considered other irrelevant factors such as prejudice to Pizza Hut and judicial economy in assessing whether the waiver was knowing and voluntary. We read the district court's opinion as simply noting the potential prejudice to Pizza Hut and the delay if the court changed the proceedings to a jury trial. The court did not treat these realities as additional, equally weighty factors. In any event, even if we ignore these "additional" factors, the others favor the district court's determining that Pandya contractually waived his jury right here.

B

There is still the question of the waiver's scope. Pandya argues in a footnote that the Transfer Agreement does not purport to supersede the Franchise Agreements and Forbearance Agreements and thus cannot apply to all his claims. The Transfer Agreement's plain text contradicts Pandya's position.

The jury waiver states: "The parties to this Agreement explicitly waive their respective rights to a jury trial in any litigation between or among them and hereby stipulate that any such trial shall occur without a jury." This waiver language is broad, covering "*any* litigation between or among" the parties. Thus, the district court was correct that the jury waiver's plain language "applies to the universe of litigation between" Pizza Hut and Pandya. Moreover, the jury wavier only channels any claims from the parties' prior agreements into a bench trial; it does not alter the parties' obligations under those other agreements. So it does not supersede those agreements.

IV

The district court correctly struck Pandya's jury demand because he knowingly and voluntarily waived his right to a jury trial. Having concluded

the waiver is valid, we need not evaluate the parties' arguments on Federal Rules of Civil Procedure 38 and 39.

AFFIRMED.